[Filed November 16, 1885.]

# VIRGINIA WATSON *v.* DUNDEE MORTGAGE AND TRUST INVESTMENT COMPANY.

MORTGAGE— REGISTRATION OF.— In this State a mortgage is only a security for a debt or the performance of the acts therein mentioned. But in form it is a conveyance, and as such within the intent of the registry act.

ASSIGNMENT OF MORTGAGE— RECORDING OF, UNNECESSARY—(THAYER, J., dissenting). — A mortgage may be assigned without a formal conveyance. Such an assignment is not within the meaning of the registry act, and does not need to be recorded to protect the assignee against subsequent purchasers or encumbrancers.

FORECLOSURE — INTEREST ACQUIRED BY PURCHASER. — The purchaser at a foreclosure sale acquires the right of the mortgagee so far as he has any claim or interest in the premises for the security of his debt, and also so much of the equity of redemption as is not bound by the lien of a junior encumbrancer.

MERGER IN EQUITY. — Where the owner in whom different estates have united has an interest in keeping them distinct, the intent to keep the estates separate will be implied or presumed, and there will be no merger.

ID.—INTERVENING ESTATE. — When an outstanding estate intervenes between the several interests uniting in the same person there cannot be a merger.

EQUITY — FORECLOSURE — DEFAULT—ASSIGNEE, WHEN BOUND BY — AGENT—TRUSTEE. — R., the duly authorized agent of a foreign corporation, took a mortgage in his own name as "manager," and in fact as trustee for such company. In February, 1881, a prior mortgage on the same premises was foreclosed, R. being made a party and making default. In September, 1881, R., being still the agent of the corporation, brought suit in his own name as "manager" to foreclose the first-named mortgage so far as it affected other lands, recognizing in his bill the fact and the validity of the previous foreclosure. *Held*, that the corporation was bound by R.'s default in the first foreclosure suit, notwithstanding he had prior thereto formally assigned his said mortgage to said company.

MARION COUNTY.    Defendant appeals.    Affirmed.

The facts are stated in the opinion.

*Ellis G. Hughes*, for Appellant.

It is a general and well-settled rule that in order to render a valid judgment or decree against a party, the court must have jurisdiction by and under service of process on him in the suit.

(*Case* v. *Humphrey*, 6 Conn. 139; *Starr* v. *Scott*, 8 Conn. 483, 484; *Jones* v. *Kenny*, Hardin, 96; *Ex parte Davis*, 41 Me. 59.) And this rule is applied to foreclosure suits to the extent of a holding therein that subsequent lien holders are not cut out or affected by suits to foreclose prior liens, to which they are not parties or in which they are not served. (*McCall* v. *Yard*, 9 N. J. Eq. 359; *Brainard* v. *Cooper*, 10 N. Y. 357, 358, 359; *Goodenow* v. *Ewer*, 16 Cal. 466–468; *Sellwood* v. *Gray*, 11 Oreg. 535.) It is not necessary to record an assignment to protect the rights of an assignee. (*James* v. *Morey*, 2 Cowen, 246; S. C. 14 Am. Dec. 475, 481, 488, 509, 510; *Oreg. & W. Trust Ins. Co.* v. *Shaw*, 5 Sawy. 342.) No purchaser under the Dickson foreclosure could claim to stand in a better position than a subsequent assignee from Reid would have done. They acted on the chance that he was the proper party to the foreclosure suit. The proper parties to a foreclosure suit must be made defendant at the peril of plaintiff and purchasers. (*Swift* v. *Edson*, 5 Conn. 535, 536.) When Hughes purchased at the foreclosure sale under the Dickson mortgage, he acquired, *first*, the legal estate formerly owned by McCallister, subject to the lien of the mortgage to defendant; *second*, a claim on the property prior to the lien of this defendant, as for the amount actually due on the Dickson mortgages, without the costs of the foreclosure sale. (*Sellwood* v. *Gray*, 11 Oreg. 535; *Gage* v. *Brewster*, 31 N. Y. 218; *Vroom* v. *Ditmas*, 4 Paige, 531; *Benedict* v. *Gilman*, 4 Paige, 51; *Vanderkemp* v. *Skelton*, 11 Paige, 28.) Hughes sometime after his purchase conveyed the land which he had purchased at the Dickson foreclosure to Swegle. Nothing was said about a conveyance of a separate lien and legal estate. Hughes conveyed as the absolute owner of the land. This either left the title to the lien in Hughes or it worked a merger. In fact, it worked a merger. The rule is that a conveyance in fee by the party holding both a mortgage lien and the fee, without mention of the lien, works a merger. (1 Jones Mortgages, § 867.) The plaintiff is a simple lien holder, having taken a lien on the land under a mistake as to the condition of the title, and the existence of defendant's lien. As between her and the

defendant, the defendant has the superior equity, but even if the equities were equal, the defendant being prior in point of time must prevail. Nor have the proceedings in the United States court any bearing. The mortgage remains a lien, and may be enforced notwithstanding a judgment for a whole or a part of the mortgage debt, or a decree of foreclosure. (2 Jones Mortgages, § 936, p. 41.) The allegations in the bill do not bind the plaintiff in the suit, in any event when not sworn to. (2 Greenl. Ev. 594, § 561, n. 1.)

*E. B. Watson,* for Respondent Virginia Watson.

A mortgage is a conveyance of an "estate or interest" in lands, else there is no provision for recording it, as it is not specially named in the statute. (Misc. Laws, ch. 6, pp. 514, *et seq.*) And if a mortgage is such a conveyance, an assignment of a mortgage must also be, for it passes the estate of the mortgagee to the assignee. (*Decker* v. *Boice,* 83 N. Y. 220.) Our registry act dates back to 1854, and is, we believe, older than the Revised Statutes of New York, whose language is construed in this decision. And there is stronger ground for holding in the present case than in that, that the interest of a mortgagee was regarded by the legislature as an "estate or interest" in lands at the time our act was passed. The exception in section 29 of the same chapter sustains, rather than opposes, this construction. (1 Jones Mortgages, § 472; *Belden* v. *Meeker,* 47 N. Y. 307.) Taking all the provisions of our registry act together, as well as those referring to the foreclosure of liens, and the inference is, we think, very strong that every change in interest in real property should appear of record. (Civ. Code, § 411; *Decker* v. *Boice,* 83 N. Y. 220; *Bacon* v. *Van Schoonhoven,* 87 N. Y. 446.) But if an assignment of a mortgage is not within the recording act of this State, still the Dundee Company should be held as estopped from setting it up in this suit. (*Henderson* v. *Pilgrim,* 22 Tex. 464; *McCa e* v. *Farnsworth,* 27 Mich. 52; *White* v. *Bartlett,* 14 Neb. 320; *Bowling* v. *Cook,* 39 Iowa, 200; *Moore* v. *Metrop. Bank,* 55 N. Y. 41; *Davis* v. *Bechstein,* 69 N. Y. 440.) The Dundee Co. has split its

demand, and is trying to foreclose its mortgage piecemeal in different courts. This cannot be allowed. (*Miller* v. *Covert*, 1 Wend. 487; *Mascarel* v. *Raffour*, 51 Cal. 242; *Herriter* v. *Porter*, 23 Cal. 385; 2 Jones Mortgages, § 1463.) And in equity the plaintiff's claim for purchase money loaned to Eugene McCallister, is equally as much entitled to protection as Eugene McCallister's claim for the same money would have been had he furnished it himself. She has the same equities he would have had, if he had advanced the purchase money. (*Person* v. *Merrick*, 5 Wis. 231; *Benedict* v. *Gilman*, 4 Paige, 58; *Goodman* v. *White*, 26 Conn. 317; *Brainerd* v. *Cooper*, 10 N. Y. 356; *Vanderkemp* v. *Skelton*, 11 Paige, 28; *Knowles* v. *Rablin*, 20 Iowa, 101; *Thompson* v. *Chancellor*, 7 Greenl. 377.)

*Wm. M. Ramsey*, for himself and for Respondents Bonham and Piper.

*W. M. Holmes*, for Respondent Levy.

LORD, J.—This is a suit in equity to foreclose a mortgage executed by Eugene McCallister to the plaintiff, upon a certain tract of 220 acres of land in Marion County. The question to be decided involves the priority of liens, first, as between the appellant and the plaintiff; and second, as between the appellant and his co-defendants.

A summary of the facts out of which the controversy arises is, that the two first mortgages on this land were given by H. McCallister and wife to Eliza Dickson, one in October, 1874, and the other in November, 1878, to secure two certain promissory notes, and that subsequently the same were assigned to James Dickson. After this, and in September, 1879, the next mortgage was given by the said H. McCallister and wife to "Wm. Reid, Manager," upon the same land, and *other lands* of the mortgagors, to secure notes of that date; and this is the mortgage through which the appellant, the Dundee Mortgage and Trust Investment Company, make their claim in this suit. At the time this mortgage was executed, and until September, in 1882, Wm. Reid was the general agent of the Dundee Com-

pany, and manager of its affairs in this State. In January, 1880, William Reid, Manager, assigned the said mortgage by an instrument in writing, duly acknowledged but not recorded, to the Dundee Company.

In December, 1880, James Dickson brought a suit to foreclose the two mortgages assigned to him by Eliza Dickson, in the Circuit Court for Marion County, against H. McCallister and wife, and made Wm. Reid a party, as the holder of a subsequent lien. Service of the summons was duly made on Reid personally. In February, 1881, a decree was rendered in favor of Dickson for $6,282.28, and $338 costs and disbursements, as the first lien. Execution was issued and the premises were sold in April, 1881, to John Hughes, for $6,794.19, being but one dollar in excess of such decree, interest, costs, and disbursements, and accruing expenses. This sale was confirmed and a sheriff's deed executed to Hughes.

On September 21, 1881, Wm. Reid, Manager, filed his petition to foreclose the mortgage so given to him in the United States Circuit Court, and in that petition Reid, as plaintiff, alleges that the two mortgages given to Eliza Dickson on the 220 acre tract were prior liens, and had been foreclosed in a suit to which he was made a party in the Circuit Court for Marion County, and the said tract was duly sold under the decree therein, and the lien of his mortgage thereby cut off and extinguished as to such tract; and that he then had no lien thereon and was not entitled to any decree for the sale of the same. John Hughes, who then held the legal title to said tract of land under the sheriff's deed, was made a party defendant to such suit. A decree of foreclosure was rendered in May, 1882, for the amount due on the mortgage, and for the sale of all the land included therein, except this 220 acres, and the same was duly sold under such decree in October, 1884. On the 3d day of October, 1881, Hughes and wife conveyed the 220 acre tract to Geo. W. Swegle for the stated consideration of $7,500, and on July 20, 1882, Swegle and wife conveyed the same property to Eugene McCallister for the stated consideration of $5,000. On that day the plaintiff loaned Eugene McCallister $5,000, and took the note and

mortgage which forms the basis of this suit. In July, 1883, Eugene McCallister brought an action in ejectment against H. McCallister and wife to obtain possession of the mortgaged land. The defendants filed a cross-bill in equity that the plaintiff Eugene McCallister hold in trust for them, and in January, 1884, a decree was made to that effect. On the 29th day of January, 1884, but after the decree in the Supreme Court, H. McCallister and wife executed a note and mortgage upon this tract of land to the defendants Bonham, Ramsey, Piper, and Chadwick. The defendant Levy is a judgment creditor. The decree for the balance in favor of the appellant in the United States court was not docketed until subsequently to all these liens. The court below rendered a decree declaring that the lien of the plaintiff and the lien of the co-defendants of the appellant were prior to its lien.

Upon the facts, as stated, the appellant admits that the plaintiff made her loan and took the security in good faith and without any notice of the trust as between Eugene McCallister and H. McCallister and wife, and upon the representations of the latter to the plaintiff at the time, that their son Eugene was about to make the purchase on his own account and needed the money to pay the purchase price, and that the amount claimed by the plaintiff is due; admits that the plaintiff had no notice of the assignment by Reid to the appellant, nor had Dickson any actual notice of the same, and that Reid was manager for the defendant, and had notice of the facts as to Dickson's foreclosure, and that the 220 acre tract is not of sufficient value to pay the plaintiff anything, if appellant has a first lien; admits that the 220 acre tract was excepted out of the foreclosure proceedings in the United States court, but the plaintiff was no party to that suit.

The first question presented for our consideration upon this record is, whether the assignment of a mortgage is such a conveyance as is manifestly within the intent of our registry act. If it is such a conveyance, the counsel for the appellant admits the failure to record the assignment of the mortgage in this suit is fatal to this case. Upon this point, the contention of the

plaintiff is, that a mortgage is a conveyance of an "estate or interest" in lands; otherwise there is no provision under the registry act for recording it, as it is not specially named in the statute (Misc. Laws, ch. 6, pp. 514, *et seq.*); and his conclusion is, that if a mortgage is such a conveyance, an assignment of a mortgage must be also, for it passes the estate or interest of the mortgagee to the assignee. And this conclusion, the counsel for the plaintiff insists, is further strengthened by a fair construction of all the provisions of our registry law, taken in connection with the provisions of section 411 of the Civil Code for the foreclosure of liens.

In this State a mortgage is literally a security for a debt or the performance of the acts therein mentioned (*Sellwood* v. *Gray,* 11 Oreg. 535); but in form it is a conveyance, and as such within the intent of the registry act, which requires it to be recorded to affect with notice subsequent encumbrancers and purchasers. And the assignment of a mortgage may be in the form of a conveyance, and when thus executed and acknowledged it may be admitted to record. But we all know that the assignment of a mortgage may be effected without any such formal conveyance. It may be assigned by a mere writing of the assignor declaring that he thereby assigns the mortgage to the person named in such writing, or it may be assigned by a simple indorsement or delivery of the note for which the mortgage is a security. It is a familiar principle that in the case of a debt secured by mortgage, the debt is the principal and the mortgage an incident, and that an assignment of the debt is an assignment of the mortgage. This principle is too well understood, and the authorities in support of it are too numerous to require citation.

And in cases of this character which are not in the form of a conveyance, there is no assignment to record or which would be entitled to record. Nor do we understand, when the assignment of the mortgage is made in the form of a conveyance, there is any obligation imposed by the statute which requires the assignee to have it recorded to protect himself against subsequent encumbrancers and purchasers; only, when executed in such form, it may be admitted to record, and when recorded a certified copy

of it may, perhaps, be used as evidence.  Such would seem to be the effect and extent of the implication arising out of sections 22 and 34 of the chapter of Miscellaneous Laws referred to, *supra*.

But however this may be, there is nothing in these sections or the statute, expressly or otherwise, requiring such an assignment to be recorded by the assignee to protect himself against subsequent purchasers and mortgagees.  The most that can be said is, that when the instrument of assignment is in the form of a conveyance it may be admitted to record, but the statute imposes no obligation upon the assignee to record it.  Whether he shall record it or not, when in such form, would seem to be wholly discretionary.  The fact that the mortgage may be assigned by other modes not in the form of a conveyance, effectual to transfer the lien, which would not be entitled to record, without prejudice to the rights of the assignee as against subsequent purchasers or encumbrancers, would seem to make this all the more apparent.  The reason which brings the mortgage within the intent of the recording act, without specially naming it, and requires it to be recorded to give constructive notice, is that it must necessarily be in the form of a conveyance.  There is no other mode of executing it.  The necessity of the case brings it within the meaning of the registry act for the recording of conveyances.

It is needless to say that an assignment of a mortgage does not come within this principle.  The general rule is that unless the recording of the assignment is required by law, the recording of it is of no effect.  (Pomeroy Eq. Juris. § 651, n.)  The truth is, the construction of our recording act in respect to the particular matter under consideration has received a very careful consideration by Mr. Justice Deady in *Oregon Trust Co.* v. *Shaw*, 5 Sawy. 342, 343; and the result he reached was in conformity with the view here expressed.  While it is true his construction of our statute is not absolutely binding upon us, yet his acknowledged familiarity with our statutes, rendered perhaps more especially so by his repeated and eminent services in their codification, and his deservedly high reputation as a jurist and

thinker, entitles his judicial opinions at all times to high consideration, and in the particular case to more than ordinary weight. He said : " In the absence, then, of any legislative direction to that effect, there does not seem to be any obligation resting upon an assignee to record his assignment to protect himself against any subsequent purchaser or mortgagee." And in this view we record our concurrence as the result of our investigation.

It is next claimed by the appellant that when Hughes purchased at the foreclosure sale of the Dickson mortgages, by such sale he acquired the legal title formerly owned by H. McCallister and wife, subject to the lien of the mortgage to the appellant, and a claim on the property prior to the lien of the appellant as for the amount due on the Dickson mortgages. In *Sellwood* v. *Gray*, 11 Oreg. 535, S. C. 5 Pacif. Rep. 196, it was held that the effect of a foreclosure is to transfer to the purchaser the rights of the mortgagee so far as he has any claim or interest in the mortgaged premises for the security of his debt, and also to transfer to him so much of the equity of redemption as was not bound by the lien of a junior mortgage.

The title, then, which Hughes acquired under the sale to him was precisely the same as if he had taken an assignment of the Dickson mortgages, and the deed of Hardin McCallister and wife of all their interests in the premises, subject to the right of the appellant to redeem the premises by the payment of the amount due on the Dickson mortgages. He had all the estate of the mortgagors and mortgagee, subject only to the lien of the appellant's mortgage. And as to the Dickson mortgages, with which we are more particularly concerned, he acquired the right to them in the same manner and to the same extent as though the mortgages had been assigned to him without foreclosure. (*Vanderkemp* v. *Skelton*, 11 Paige, 33; *Vroom* v. *Ditmas*, 4 Paige, 531.) Of course, we are proceeding upon the hypothesis, as contended for by counsel for appellant, that the appellant, the Dundee Co., was not made a party to the foreclosure under the Dickson mortgages, and that as to it the proceedings were a nullity.

But to return.  As a result of this, it is admitted that when Hughes bought at the foreclosure sale, he acquired, as separate and distinct interests in him, the prior lien of the Dickson mortgages, and the legal title, subject to the lien of the appellant's mortgage.  Now the counsel for the appellant contends that if these interests were in fact existing in him as separate and distinct interests, then, under the rules of merger, he had the power to merge one in the other, and once merged, they never could be separated; or that he had the power to keep them separate, and convey one as separate from the other; but that when he conveyed by deed to Swegle, and Swegle to Eugene McCallister, the effect was to work a merger of the lien and fee; and as a consequence, when the plaintiff loaned the money to Eugene McCallister for the purchase of the property, the Dickson mortgages and the fee being merged, she did not succeed to the equitable interest of the Dickson mortgages as a purchaser under the decree of foreclosure.

It is difficult to understand, upon the facts disclosed by this record, how the foundation for a merger could exist while the outstanding encumbrance of the appellant was a subsisting lien upon the land.  Some brief notice of what constitutes merger, and how it is regarded in equity, will assist in the disposal of the question under consideration.  A merger is defined to be "where a greater and lesser estate coincide and meet in one and the same person, in one and the same right, without any intermediate estate," then at once the lesser estate is absorbed by the greater, or, in legal parlance, merged.  In equity, mergers are considered odious, and are much less favored than at law, and are made to depend upon the intention and interest of the party.  It is only in those cases where it is perfectly indifferent to the party in whom the interests had united whether the charge or term should or should not subsist, that in equity the term is merged.  (*Forbes* v. *Moffatt*, 18 Ves. Jr. 394.)  But if the owner has an interest in keeping them distinct, or there is an intervening right, there will be no merger.  "The doctrine of merger," said Bellows, C. J., "springs from the fact that when the entire equitable and legal estates are united in the same

person, there can be no occasion to keep them distinct, for ordinarily it could be of no use to the owner to keep up a charge upon an estate of which he was seized in fee-simple; but if there is any outstanding, intervening title, the foundation of the merger does not exist, and as a matter of law, it is so declared." (*Stantons* v. *Thompson*, 49 N. H. 272.) "But if the owner of the legal and equitable title has an interest in keeping these titles distinct, he has a right so to keep them, and the mortgage will not be extinguished." (Wilde, J., in *Loud* v. *Lane*, 8 Met. 518.)

The intent to preserve the interests or rights distinct may be express or implied. And Lord Thurlow said: "Whenever it is more beneficial for the person entitled to the charge to let the estate stand with the encumbrance upon it than to take it discharged of the encumbrance, that circumstance will have a controlling influence in deciding upon the implied intent." (*Compton* v. *Oxenden*, 2 Ves. Jr. 264.) In the absence then of an express intention to the contrary, the intention to keep the two estates separate will be implied or presumed, when it is for the interest of the party that they should be kept separate. It will not do, then, as was said by Elliot, J., to assume, as a matter of course, that there was a merger, for there are many cases in which, in order to prevent injustice, courts will not allow merger to take place, although all the essential elements of a technical merger combine in the particular case. (*Evansville Gas Light Co.* v. *State*, 73 Ind. 222.)

Now, the Dickson mortgages being prior liens to that of the appellant, who was not made a party to the foreclosure proceedings under them, Hughes, by his purchase at such foreclosure sale, acquired, not only the equity of redemption, subject to the mortgage of the appellant, but the right to the Dickson mortgages in the same manner and to the same extent as though they had been assigned to him without foreclosure. And it was manifestly for the interest of Hughes that these mortgages should not be extinguished or merged in the legal title, as the mortgage of the appellant was a subsisting lien upon the property, and he would have been obliged to satisfy it before the property would

be free from encumbrance; or in other words, he would lose the benefit of the Dickson mortgages to which he had been subrogated by said foreclosure sale. To place Hughes, or those who succeeded to his place or rights, in this position, upon the ground of a technical merger, would work a flagrant injustice, while by keeping these interests separate and distinct, the rights of priority are preserved and maintained in the order in which the several transactions occurred and were recorded, and injustice prevented. Surely, if it be true, as counsel contended, that these mortgages have not been foreclosed as to the appellant, because it was not made a party to the foreclosure proceedings under them, then they are still in existence, not merged, but subsisting liens; and being prior liens to that of the appellant, the only way for the appellant to get rid of them is to redeem.

Nor is it perceived why the same equitable principle is not alike applicable to the other purchasers, Swegle and Eugene McCallister. If Hughes, as purchaser at the sheriff's sale under the decree of foreclosure, succeeded to all Dickson's rights and priorities under these mortgages, so did Swegle, as purchaser from Hughes, and Eugene McCallister, as purchaser from Swegle, become invested with the same rights and priorities. It would be as manifestly unjust to allow a technical merger against them as Hughes, and the interest of each successive party to the transaction is such in keeping the estates or interests separate that equity will presume such was the intention.

The facts show a case where it is not perfectly indifferent to the parties in whom the interests had united that they should or should not be merged, but their interests require that they should be kept separate to protect from injustice and to conserve equity and good conscience. And in equity the plaintiff is a purchaser, and her claim for the purchase money loaned to Eugene McCallister is equally as much entitled to protection, and her interests as much opposed to a merger, as Eugene McCallister's claim for the same money would have been had he furnished it himself. She had the same equities he would have had if he had advanced the purchase money. This invests her with the same rights and priorities. and entitles her to be

paid before the appellant. Nor does it work any injustice to the appellant, for it only preserves that order of priority which existed when its mortgage was executed and of which it had full notice.

Thus far we have conceded the assumption of counsel for the appellant that the service upon Reid in the Dickson foreclosure was not service upon the appellant, and that as to it the proceeding was a nullity, for the purpose of showing that there is no equitable principle which can be applied to push this junior encumbrance in front of the prior lien, or supersede the equitable rights arising under it. The fact is, the contention of counsel necessarily assumes the existence of an outstanding, intervening interest or lien which is opposed to the foundation of merger. We must now examine the rights of the appellant with respect to its co-defendant.

The facts show, as is alleged in the answer of the Dundee Co., appellant, that this mortgage was made to Wm. Reid, Manager, but it was, in fact, for the Dundee Co., and that Reid assigned it to the company January 20, 1880, but that the assignment was not recorded. Subsequently, in February, 1881, the Dickson mortgages were foreclosed, and Reid being the ostensible owner of record was made a party and made default. Yet, after this assignment and these foreclosure proceedings had taken place, and while Reid was still the agent or trustee of the company, in September, 1881, he brought suit in the United States court, in his own name, as manager, to foreclose this same mortgage. In that suit the regularity of the proceedings and the service upon Reid in the Dickson foreclosure is alleged, and the recitals of the record expressly declare that the rights of the Dundee Co. were foreclosed and barred so far as the 220 acres are concerned, and a decree is entered in conformity therewith. The company thus sues in the name of Reid after the assignment, and by virtue of his relation to act for them. As disclosed by this record, there can be no doubt that Reid had control of the business of the company in Oregon, and the possession of the property, with authority to transact such business and to hold the legal title to such property in his own name, and

in all respects to deal with it as his own, so far as third persons or parties are concerned. This is not the case of an assignment to a stranger, and then afterwards the assignor being impleaded as a junior encumbrancer by a prior mortgagee, and subsequently bringing suit in his own name on the mortgage which he had previously assigned; but that of the agent or trustee of the party, made such ostensible owner of record by such party, and with authority by virtue of his relation to act in the premises.

The difference is manifest. The act of Reid was the act of the principal or bound the principal. If he was endued with capacity to sue as the owner, as he did, his act was the act of the principal, and made him a proper party to the prior proceedings in the foreclosure. The transaction seems to be susceptible of no other construction, and to hold otherwise would work a manifest injustice, if not a fraud. It certainly ought not to be allowed to take advantage of its own act, and claim that it had no notice of the Dickson suit, when the party to the record, and the same party it had placed upon the record as owner of this mortgage, was impleaded in the suit and made default. There was in fact but one interest, and that Reid was made to represent. Mr. Jones says: "It has been held in some cases, however, that as trustee and *cestui que trust* represent but one interest, he alone should be made a party to the suit, as he would be the party entitled to redeem."

The facts of this case are such that we think it would be inequitable to allow the appellant to take this advantage, and until better advised, the decree must stand.

THAYER, J., concurs in the result, but dissents from the conclusion that the recording acts of this State do not extend to assignments of a mortgage.

WALDO, C. J., absent.