Argued February 1, affirmed February 20, 1917.

## HICKS *v*. BEALS.

(163 Pac. 83.)

**Subrogation—Purchasers of Encumbered Property.**

1. One who purchases a stock in trade in good faith, paying full value, without compliance with Bulk Sales Act (Sections 6069, 6070, L. O. L., as amended by Laws 1913, p. 537), being ignorant thereof, and not knowing of unsecured claims against the seller, and as part of the transaction, and with a portion of the purchase money, pays off a mortgage thereon, to perfect the title, and permits it to be discharged, is entitled to have it reinstated and to be subrogated to the

rights of the mortgagee, the unsecured creditors seeking to subject the property to their claims, and he in defense thereof bringing his suit for the relief.

[As to the right of subrogation, see note\ in 99 Am. St. Rep. 474.]

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

J. H. Hicks, plaintiff in this suit, purchased a garage of the defendant B. L. Beals, Jr., with the equipment and stock of merchandise in bulk, the purchase price aggregating $1,300. At the time of the deal one Snodgrass, who held a chattel mortgage on the merchandise in question given for the purchase price, was in possession for the purpose of enforcing his lien. As a part of the transaction, with a portion of the purchase money Hicks paid off the mortgage, amounting, with principal and interest, to $937.31, which was released. Hicks went into possession. He did not demand nor receive from Beals any statement of his creditors or the amounts owing to them, as required by the provisions of the Bulk Sales Act (Sections 6069, 6070, L. O. L.), as amended in 1913 (Laws 1913, p. 537), and no notice was given to the creditors in pursuance of such requirement. After he went into possession the creditors of Beals assigned their respective claims to the defendant Adjustment Bureau of Portland Association of Credit Men, a corporation, which instituted action against Beals and attached the merchandise in question as the latter's property, claiming that, inasmuch as the Bulk Sales Law had not been complied with, the attempted transfer to Hicks was void. After the attachment was levied Hicks brought this suit, asking, among other things, that the chattel mortgage be revived, and that he be subrogated to the rights of Snodgrass in the mortgage.

It is alleged in the complaint that the plaintiff was in ignorance of the law mentioned, and for that reason did not attempt to comply with its provisions; that he made the purchase in good faith and paid the full value of the property; that he had no knowledge of any indebtedness owing to the Adjustment Bureau's assignors; and that he had no intention of cheating or defrauding any of the creditors of Beals. While these allegations are put in issue by the answer, they were practically admitted by the defendant upon the trial. The trial court granted plaintiff the relief prayed for. From that decree the Adjustment Bureau appeals.      AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Maurice W. Seitz.*

For respondent there was a brief with oral arguments by *Mr. H. T. Botts* and *Mr. Edmund B. Tongue.*

MR. JUSTICE BEAN delivered the opinion of the court.

It is contended by the Adjustment Bureau that the mistake of plaintiff Hicks was one of law from the consequences of which equity will not relieve him. It is apparent that at the time he permitted the mortgage to be discharged, he was not aware of any valid claims against the property that would intervene and impair or defeat his right thereto. He is not asking for relief on account of the mistaken idea he entertained as to the Bulk Sales Law. He accedes to all rights of the creditors in this respect which the Adjustment Bureau represents. He was mistaken in regard to other claims of creditors which could be asserted as against the property of which he knew nothing. He paid the mortgage, not as a volunteer or intermeddler, but to perfect the title to the prop-

erty which he was about to obtain. It is entirely against his interest that the mortgage lien should merge with the title to the property.

The question is: On account of the facts and circumstances relating to the matter, is he entitled to have the chattel mortgage reinstated and be subrogated to the rights of Snodgrass, the mortgagee, as contended for on his behalf?

1. The general principles governing merger and subrogation are the same whether the subject matter of the mortgage be real or personal property: Jones, Chattel Mortgages, § 658, note 2. If a third person has an interest in property covered by a mortgage which entitles him to redeem and he is under no obligation to pay the debt, a payment by him does not operate as a satisfaction of the debt, unless it is manifestly the intention or interest of the person making the payment that it should so operate; but such payment subrogates him to the benefit of the security: Jones, Chattel Mortgages (2 ed.), § 659. In such a case even as against the expressed intention, that which is inferred from the relation of the parties to each other and to others, or from their own interests, may be sufficient to control the transaction: 1 Jones, Mortgages (3 ed.), § 856. This same author also lays down the following rule:

"Even when the parties have undertaken to discharge the mortgage upon the uniting of the estates of the mortgagor and mortgagee in the latter, by reason of some intervening title or other cause, that it should not be regarded as merged. It is presumed, as matter of law, that the party must have intended to keep on foot his mortgage title, when it was essential to his security against an intervening title, or for other purposes of security; and this presumption applies, although the parties through ignorance of such intervening title, or through inadvertence, have actu-

ally discharged the mortgage and canceled the notes, and really intended to extinguish them'': § 873.

See Harris, Subrogation, § 646; *Watson* v. *Dundee M. & T. I. Co.*, 12 Or. 483 (8 Pac. 548); *Title Guarantee Co.* v. *Wrenn,* 35 Or. 62 (56 Pac. 271, 76 Am. St. Rep. 454); *Fogarty* v. *Hunter, post,* p. 183 (162 Pac. 964); *Roth* v. *Troutdale Land Co., post,* p. 500 (162 Pac. 1069).

Plaintiff Hicks purchased the property in question without complying with the requirements regarding sales of merchandise in bulk, but he acted in good faith and without any real intention of defrauding creditors. The mere constructive fraud of a purchaser will not prevent him from being protected if he has not actively participated in the fraud. A large part of the purchase price was applied to the payment of the mortgage on the personal property purchased. Hicks is therefore entitled to be subrogated to the rights of the mortgagee whom he paid: *Adams* v. *Young,* 200 Mass. 588 (86 N. E. 942); *Loos* v. *Wilkinson,* 113 N. Y. 485 (21 N. E. 392, 10 Am. St. Rep. 495, 4 L. R. A. 353), and cases there cited. The right of subrogation is an equitable right, and can be granted to the plaintiff only through equity. The security to which the plaintiff is entitled, having been released of record through an inadvertence and mistake, should be reinstated in this suit: 37 Cyc. 363.

It is contended upon the part of defendant Adjustment Bureau that in such a case a merger cannot be defeated by a plaintiff asking for affirmative relief in the same manner in which it can be resisted as a defense. A sufficient answer to this contention is that the defendant Adjustment Bureau is seeking to subject the property, which plaintiff endeavored to purchase and upon which he paid a lien, to the payment

of its claims and in defense of which he was compelled to institute this suit. We see no real merit in the contention. The form of the action or situation of the parties, whether plaintiff or defendant, is not a controlling feature. It follows that the decree of the lower court should be affirmed; and it is so ordered.

AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE McCAMANT concur.