[No. 15220½. Department Two. October 15, 1919.]

WINTLER ABSTRACT & LOAN COMPANY, *Appellant*, v.
CHARLES B. SEARS *et al., Respondents.*[1]

CHATTEL MORTGAGES (49, 50) — RIGHTS AND LIABILITIES — USE BY
MORTGAGOR—CONVERSION OR INJURY TO PROPERTY. Notwithstanding a
chattel mortgage creates a lien only and conveys no title, a mort-
gagor of abstract books has no right to impair the security by taking
and selling photographic reproductions of the books, in view of Rem.
Code, § 1111, giving the mortgagee the right to maintain an imme-
diate action for foreclosure, if there is reasonable cause to believe
that the property will be destroyed, lost, or removed, and § 3669,
making injury to the same a misdemeanor; since making the secret
information public must be considered an unlawful destruction of
the security.

SAME (78) — FORECLOSURE — SALE — PROPERTY INCLUDED — PHOTO-
GRAPHIC COPIES OF ABSTRACT BOOKS WRONGFULLY TAKEN. Without de-
ciding whether a chattel mortgage of abstract books covers photo-
graphic reproductions unlawfully taken by the mortgagor and sold
to a third person, a decree of foreclosure and sheriff's sale partic-
ularly describing the books only, does not pass title to the copies,
or authorize a possessory action to recover the copies.

Appeal from a judgment of the superior court for
Clarke county, Reynolds, J., entered July 29, 1918,
upon granting a nonsuit, dismissing an action to re-
cover personal property and for damages. Affirmed.

*Crass & Hardin,* for appellant.
*McMaster, Hall & Drowley,* for respondents.

BRIDGES, J.—This action was brought to recover the
photographic reproductions of certain mortgaged ab-
stract books and records, and to recover damages. The
trial court nonsuited the plaintiff, and this appeal is
from the judgment dismissing the action.

The facts are substantially as follows: In the year
1912, the Clarke County Abstract & Loan Company

was the owner and in possession of certain real estate and certain records, books, plats, maps, instruments, machines, furniture and fixtures, constituting a complete plant used in the conduct of its business as a maker and seller of abstracts of title to real property. On August 10, 1912, the Clarke County Abstract & Loan Company, in order to secure a note of twenty-four thousand dollars, executed and delivered to Jessie M. Wintler, as trustee, a mortgage upon its real estate and upon the above-mentioned personal property. One clause of the mortgage is as follows:

"And the said mortgagor mortgages also to the mortgagee as additional security for the said note, all of its plant, used in the conduct of its business as engaged in the compilation and sale of abstracts of title to real property and in making loans and other like business, and consisting of all its records, books, plats, maps, instruments, machines, furniture and fixtures, and all other of its equipment as the same now exists and is located at No. 607 Eleventh Street, Vancouver, Washington, or as the same may hereafter be renewed, added to, or enlarged."

After giving the mortgage, the Clarke County Abstract & Loan Company continued in possession of the mortgaged property and continued the abstract business. It failed to make the payments required by the terms of the note and mortgage, and on October 26, 1915, the trustee commenced an action to foreclose the mortgage. While this action was pending, the Clarke County Abstract & Loan Company made photographic copies of all of the books and records of the abstract plant and sold them to Charles B. Sears and C. W. Knowles, to be used in the same county. Afterwards the mortgage was duly foreclosed, and on April 22, 1916, the property was sold by the sheriff and the mortgagee became the purchaser at the sale. Thereafter the mortgagee and the persons for whom she was

acting as trustee, together with one or two others, organized the appellant corporation, and the property obtained by purchase at the sheriff's sale was conveyed to it. After the photographic reproductions were sold to Sears and Knowles, they formed the Sears Abstract & Loan Company, which continued to use the photographic copies and to make therefrom abstracts of title to real estate, up to the time of the beginning of this action. On December 26, 1916, the Sears Abstract & Loan Company executed and delivered to the Vancouver National Bank a chattel mortgage covering the photographic copies, together with other personal property. This mortgage was given to secure a bona fide indebtedness owing to the bank. It appears that all of the respondents had actual knowledge of the existence of the mortgage to Jessie M. Wintler and the taking and sale of the photographic copies.

The chief legal question involved is, may a mortgagor of a set of abstract books and records lawfully, and without violating any of the rights of the mortgagee, make photographic copies of such books and records for the purpose of using the same after the mortgage is foreclosed, in the business of making abstracts of title to property, or selling the same to be used for a like purpose. In discussing this question it must always be kept in mind that in this state a mortgage does not serve to convey the title, but creates a lien only, leaving the title in the mortgagor. *Silsby v. Aldridge,* 1 Wash. 117, 23 Pac. 836; *Binnian v. Baker,* 6 Wash. 50, 32 Pac. 1008; *Richter v. Buchanan,* 48 Wash. 32, 92 Pac. 782; *Nettleton v. Evans,* 67 Wash. 227, 121 Pac. 54.

Apparently the question involved here is one of first impression, for no cases in point are cited in the briefs, and the somewhat extended search which we have made fails to reveal any. There is a line of cases cited

by appellant which holds that an author, at common law, has a property in his manuscript, and may obtain redress against one who deprives him of it, or, by improperly obtaining a copy, endeavors to realize a profit by its publication. The case of *Press Publishing Co. v. Monroe,* 73 Fed. 196, 51 L. R. A. 353, is illustrative of this principle; but those cases cannot help us here because there the owner was the complaining party, while here the one who complains holds only a mortgage lien. Nor—and for nearly the same reason—can we get any light from that line of cases where a photographer, employed to take certain photographs of the employer, uses his negatives or plates to take additional pictures, to be sold to others or to be put to some other use. *Klug v. Sheriffs,* 129 Wis. 468, 109 N. W. 656, 119 Am. St. 967, 7 L. R. A. (N. S.) 362; *Levyeau v. Clements,* 175 Mass. 376, 56 N. E. 735, 50 L. R. A. 397; *Douglas v. Stokes,* 149 Ky. 506, 149 S. W. 849, Ann. Cas. 1914B 374, 42 L. R. A. (N. S.) 386; *Corliss v. Walker Co.,* 57 Fed. 434, 64 Fed. 280, 31 L. R. A. 283.

The respondents contend that the mortgagor, being the owner of the property, had a right to take these photographs and dispose of them, provided he did thereby no unnecessary damage to the mortgaged property; that the mortgage did not cover the photographs, and therefore could not be foreclosed as to them. The lower court seems to have also taken this view of the case. We cannot believe that the only right which a mortgagee has is to foreclose his mortgage. The mortgagor's ownership is not unqualified; he may not do with the property as he sees fit; he may use it in the usual and customary way, doing no unnecessary damage; but he may not, over the objections of the mortgagee, use the property in any unusual, uncustomary or unexpected way, and particularly so if such use greatly injures the property or depreciates its value.

The mortgagee has, and in the very nature of the rela-
tion must have, the right at all times to protect the
property which gives him security, against any un-
usual or unnecessary damage. These principles are
laid down by Jones on Chattel Mortgages. At § 451
(5th ed.) he says:

"A mortgagee, in case of apprehended danger of
loss of the mortgaged property, may have a receiver
appointed, even before his right to foreclose has
accrued. It is sufficient to authorize the appointment
of a receiver that the mortgagor is insolvent, that the
property is not sufficient in value to secure the debt,
and that there is still danger of its removal beyond the
jurisdiction of the court. The power of a court of
equity to preserve the mortgaged property from de-
struction, so that it may answer the purpose of the
mortgage, is undoubted. A bill for an injunction and
the appointment of a receiver may be sustained, where
it is shown that these remedies are proper for the
mortgagee's protection, although the time of payment
set in the mortgage has not arrived."

And, at § 490:

"A purchaser of property upon which there is a
valid mortgage who consumes or sells the property or
any part of it is liable to the mortgagee for the dam-
ages so occasioned him; and it makes no difference
that the purchaser took the property in hostility to the
mortgage, and denying that it was an existing lien."

The same general principle has been recognized by
our legislature and enacted as a part of the laws of
this state. Section 1111, Rem. Code, provides that,
where a debt secured by mortgage is not due and the
mortgagee has reasonable cause to believe that the
mortgaged property will be destroyed, lost, or removed,
he may maintain an immediate action for foreclosure of
his mortgage. Section 3669 of the same volume pro-
vides that any mortgagor of personal property who,
with intent to hinder, delay or defraud the mortgagee,

shall injure or destroy such property or any part thereof, or shall conceal the same or remove it from the county without the consent in writing of the mortgagee, or who shall sell or dispose of the same or any interest therein, shall be guilty of a misdemeanor.

In the instant case, the chief value of the security was not in the abstract books themselves, but in the information contained in them. Any act which would make either the books and records, or the information contained in them, less valuable would to that extent lessen the value of the security. The mortgage not only covered the books themselves, but the information contained in them; and the making public of that secret information must be considered an unlawful destruction of the security. If one set of photographs may be lawfully taken and sold for use, so may a dozen sets of photographs be taken and sold; and thus what was ample security has become almost valueless. It would be small comfort to the mortgagee to tell him that he must be satisfied if the books themselves have not been injured and if they still contain the original information. That doctrine would take the kernel and leave the shell. If one mortgage a house, used only as a dwelling, he would not subsequently be permitted to convert that mortgaged property into a stable; or if one mortgaged a high-priced pleasure automobile he would not thereafter be permitted to use it as a common truck, although he might not make any physical changes in the conveyance. We have no doubt that if this mortgagee had undertaken to enjoin the taking and selling of these photographs, or had sought to have a receiver appointed to take charge of the property because of such taking and sale, or had commenced suit to foreclose her mortgage because of the depreciation of the security resulting from such taking and sale, she must have prevailed. Any other rule of law

would deprive abstract books of nearly all their commercial value; for who would hereafter lend money upon abstract books as security, knowing that one or more sets of photographic copies may afterward be lawfully taken and sold, to be used in opposition to the mortgaged property? The same rule of law which would permit a mortgagee to enjoin any act which would wholly or partially destroy the mortgaged property should also permit him to enjoin any act which would wholly or partially destroy the value of that property. We therefore hold that, in this case, the mortgagor did not have the right, over the objections of the mortgagee, to take and sell these photographic copies.

But it does not necessarily follow that the appellant can maintain this suit. This action is maintained upon the principle that the mortgage covered the photographic copies and that it was foreclosed as to those copies, and that, when the original mortgagee became the purchaser at the sheriff's sale, she purchased these copies along with the rest of the personal property, and that she thereafter conveyed the same to the appellant. If it be conceded that, under any circumstances, the purchaser at the sale might maintain a possessory action such as this, yet we are forced to the conclusion that the appellant is not in position to maintain this action. The decree of foreclosure gives a particular description of the personal property which was ordered sold. These photographic copies are not included in this description. The sheriff's bill of sale to the purchaser gives an itemized statement of the property sold, and these photographic copies are not included. It follows that the appellant cannot be the owner or entitled to the possession of these photographic copies, and cannot, therefore, maintain this suit.

While we decide that a mortgagor of abstract books and records has no right, as against the mortgagee, to take and sell photographic copies thereof, and that the mortgagee would have his action to enjoin such taking and sale, yet, where the reproductions have been taken and sold, we expressly do not decide whether such copies would be included within the mortgage, nor do we decide whether the mortgagee's action would be a possessory one, such as the one we are dealing with, or one to enjoin the use of such copies, or for their destruction, or a straight action for money damages. Having decided that the appellant is not in position to maintain this action, it is not necessary to determine the form of the proper action or the exact nature of the remedy.

Judgment affirmed.

HOLCOMB, C. J., PARKER, FULLERTON, and MOUNT, JJ., concur.