Argued March 28; reversed July 1, 1930

PHEGLEY & CAVENDER *v.* SWENDER BLUE PRINT Co. ET AL.

(289 P. 500)

*A. L. Veazie* of Portland (Veazie & Veazie of Portland, on the briefs) for appellant.

*A. C. Allen* and *Samuel B. Lawrence,* both of Portland, for respondent.

BELT, J. This is a suit to enjoin the sale of certain photostatic copies of the records of an abstract plant,

under an alleged possessory lien of the Swender Blue Print company. The facts out of which the controversy arose are as follows:

In October, 1925, the Lawyers Title and Trust company, which was then the owner of the abstract plant in question, executed a chattel mortgage thereon in favor of the Oregon Title Insurance company to secure the payment of notes aggregating $35,000. The latter company at such time was indebted to plaintiff in excess of $27,000 and it also executed its note to the Lumbermen's Trust Company bank for $35,000. The chattel mortgage was hypothecated to secure the payment of the loan from the bank and of the indebtedness to the plaintiff. Thereafter the plaintiff purchased from the bank the note executed by the Oregon Title Insurance company and held the chattel mortgage as security for all of the indebtedness. Prior to the purchase of the note from the bank, the Lawyers Title & Trust company had leased the abstract plant to the Oregon Title Insurance company and the latter carried on the abstract and title insurance business, although under stringent financial circumstances. The company did not have even sufficient funds to meet current expenses. On February 16, 1928, the plaintiff instituted suit against the Lawyers Title and Trust company and the Oregon Title Insurance company, to foreclose its chattel mortgage. On June 24, 1928, a decree of foreclosure was rendered and execution was issued to satisfy the mortgage indebtedness. While this execution sale was pending, the Oregon Title Insurance company became bankrupt and the defendant, Herbert Gordon, was appointed receiver. In addition to the indebtedness above mentioned, the company had obtained loans from plaintiff amounting to $10,000, to secure the payment of which it had deposited certain securities.

The receiver, being desirous of obtaining the release of these securities for other creditors, entered into negotiations with the plaintiff, with the consent and approval of the Lawyers Title and Trust company and the Oregon Title Insurance company, whereby the plaintiff was to take over the abstract plant in satisfaction of the amount due it under the decree of foreclosure. When such contract was finally executed, on August 30, 1928, it was expressly stipulated that, as between the plaintiff and third parties, there was deemed to be no merger of plaintiff's legal and equitable titles, but that the lien of the chattel mortgage was to be reserved. In February or March of 1928, the exact time being uncertain, the Oregon Title Insurance company entered into a contract with the Swender Blue Print company to make photostatic copies of the abstract records at the agreed price of $3,596.35. Pursuant thereto the Blue Print company entered upon such work and finally completed the same in June of that year. Having no faith in the financial responsibility of the Oregon Title Insurance company, the Blue Print company demanded the personal guaranty of the directors of the abstract company that compensation would be made for the work and material furnished. In accordance therewith the directors advanced at various times amounts aggregating $1,850, but, on default of the payment of the balance due, the Blue Print company gave notice of its intention to sell the photostatic copies in satisfaction of its alleged possessory lien. Whereupon the plaintiff instituted this suit to enjoin the sale, alleging in substance that the defendants, Oregon Title Insurance company, through its directors, and the Swender Blue Print company had entered into a fraudulent

conspiracy to impair the security of the plaintiff and to destroy the effect of the chattel mortgage lien.

The trial court found that the defendant directors of the Oregon Title Insurance company in making such contract with the Swender Blue Print company for photostatic copies of the abstract plant were acting "in furtherance of a plan or scheme to promote their own individual interests and contrary to the rights of the plaintiff," but that the Swender Blue Print company did not know of or participate in such wrongful plan or scheme and that it performed its work in good faith and was entitled to a possessory lien on the photostatic copies in its possession. It was decreed that, in the event the plaintiff should fail within 30 days to pay to the Swender Blue Print company the balance due on account of its lien, to wit, $1,746.35, the temporary injunction should be dissolved and the sale be made to satisfy the possessory lien of the Blue Print company. As to all other defendants, however, the court enjoined them from disposing of or retaining in their possession any photostatic copies of the records of the abstract plant. From that portion of the decree in favor of the Swender Blue Print company, the plaintiff appeals.

■ After the commencement of this suit plaintiff sold and transferred its interest in the abstract plant to the West Coast Title Insurance company. Defendants contend that, by reason thereof, plaintiff is not the real party in interest and the suit should be abated. There is no merit in this contention. Notwithstanding the transfer of plaintiff's interests, the cause of suit survived and there was no reason for substitution; in fact, none could be made. The precise question has been before this court several times and has been decided adversely to the contention of respondents.

There is no need of a restatement of the law. See: *Metzger v. Guynup,* 125 Or. 507 (265 P. 420, 267 P. 812); *Smith v. Cram,* 113 Or. 313 (230 P. 812); *Meyers v. Hot Lake Sanitorium Co.,* 82 Or. 587 (161 P. 697); *Oregon Auto-Dispatch v. Cadwell,* 67 Or. 301 (135 P. 880); *Fildew v. Milner,* 57 Or. 16 (109 P. 1092); *Burns v. Kennedy,* 49 Or. 588 (90 P. 1102).

■ We concur in the finding of the trial court that the directors of the Oregon Title Insurance company, in thus contracting with the Swender Blue Print company to make photostatic copies of the records of this abstract plant, acted wrongfully and, in effect, perpetrated a fraud upon the plaintiff. It is plain that they proposed to save what they could from the financial wreck and to be in a position, after foreclosure proceedings terminated, to use the spurious copies of the records in competition with the original set of books. The reason assigned for the making of the photostatic copies—namely, for fire protection—is not convincing. At such time, in compliance with the terms of the mortgage, the plant was covered by insurance amounting to $40,000. The Oregon Title Insurance company was in possession of the property merely as lessee. Why did it incur this unnecessary expense for fire protection at a time when it was not able to meet its current expenses? There was every reason to believe that the property would be sold to satisfy the mortgage indebtedness. The Swender Blue Print company, however, asserts that it furnished the labor and materials in good faith and had no knowledge of any wrongful motive which the lessee may have had in entering into this contract. After a careful analysis of the evidence, we are convinced that it participated in the alleged conspiracy to impair the security of the plaintiff. Under the stipulation of facts it is admitted that

the Swender Blue Print company, which was a stock-holder in the Oregon Title Insurance company, knew that the latter was in possession of the property as lessee. It also had constructive knowledge of the record of the chattel mortgage and of the pendency of the suit to foreclose the same. That the Swender Blue Print company was apprised of the financial condition of the lessee is evidenced by its insistence upon the personal guaranty of the directors before undertaking to perform the contract. The secrecy under which this transaction was consummated was also a circumstance tending to show participation in the alleged conspiracy. There are no minutes in the corporation books of the contract with the Swender Blue Print company, notwithstanding the work involved an expenditure of approximately $4,000. The directors were careful, however, to make a proper record of other transactions of far less importance. At the time the Blue Print company was awarded the contract it was sworn to secrecy. After the plaintiff had taken over the property in satisfaction of the decree and had transferred its interest to the West Coast Title Insurance company, officers of the latter company became aware of certain rumors that photostatic copies of the abstract plant were being made. Mr. Swender, manager of the Blue Print company, was consulted as to the truth of these rumors but denied that his company was doing such work. Mr. Swender admits that what he told Mr. Roberts of the West Coast Title Insurance company was not true and that he apologized to him for this misrepresentation. In explanation of his conduct he states that ''I had not been authorized to discuss that with anyone outside of the men that I was dealing with.'' We are at a loss to understand the necessity for such unusual secrecy if the parties

were engaged in a legitimate business transaction. Furthermore, there is a great deal of uncertainty and evasion on the part of witnesses for the defendant contracting parties as to when the photographic work was commenced. No information relative to this question can be gained from the books of the Blue Print company. There is an apparent effort on the part of such witnesses to show that the work was commenced prior to the institution of the suit to foreclose the chattel mortgage. A study of the record leads the writer to believe that the work was ordered after plaintiff commenced its foreclosure suit. Many other facts and circumstances could be related in support of our conclusion, but we think those given will suffice.

In *Wintler Abstract and Loan Co. v. Chas. B. Sears,* 108 Wash. 461 (184 P. 309, 7 A. L. R. 152), the Clark County Abstract company executed a chattel mortgage on its abstract plant. On default in payment, suit was commenced to foreclose the mortgage. While this suit was pending the mortgagor made photographic copies of all the books and records of the abstract plant and sold them to parties to be used in competition with the original plant. The purchaser of the photographic copies executed a chattel mortgage thereon to secure a loan from a bank. The chattel mortgage on the original plant was foreclosed and the mortgagee became the purchaser at the execution sale. Thereafter a replevin action was commenced to obtain possession of the photographic records, but the court held that the plaintiff had mistaken its remedy in that the property in question was not included in the foreclosure decree. It held, however, that if the mortgagee "had undertaken to enjoin the taking and selling of these photographs, * * * because of the deprecia-

tion of the security resulting from such taking and sale, she must have prevailed." The court further said:

"Any other rule of law would deprive abstract books of nearly all their commercial value; for who would, hereafter, lend money upon abstract books as security, knowing one or more sets of photographic copies may afterwards be lawfully taken and sold, to be used in opposition to the mortgaged property? The same rule of law, which would permit a mortgagee to enjoin any act which would wholly or partially destroy the mortgaged property, should also permit him to enjoin any act which would wholly or partially destroy the value of that property."

The reasoning of the court in the above case is applicable here: *International News Service v. Associated Press*, 248 U. S. 215 (63 L. Ed. 211, 39 S. Ct. 68, 2 A. L. R. 293), is also analogous in principle. In the instant case the abstract plant was produced as the result of an expenditure of a large amount of capital, together with years of labor and experience, at a cost of approximately $200,000. To permit the lessee in possession, subject to a duly recorded chattel mortgage, thus to greatly impair its value is beyond the pale of equity.

Assuming that the Swender Blue Print company, in the performance of its contract, acted in good faith and did not have knowledge of the wrongful scheme of the directors of the Oregon Title Insurance company, it does not follow that its equities are superior to those of the plaintiff. It will be remembered that the possessory lien is claimed on the photostatic copies and not on the abstract plant itself. When plaintiff took over the property in question it was careful to preserve its mortgage lien as against third parties. Whether a merger exists depends upon the intention

of the parties. Where it is for the best interests of the mortgagee not to merge legal and equitable titles, it may refrain from so doing: *Hicks v. Beals,* 83 Or. 82 (163 P. 83, L. R. A. 1917D, 1067) ; *Katz v. Obenchain,* 48 Or, 352 (85 P. 617, 120 Am. St. Rep. 821) ; *Watson v. Dundee M. & T. I. Co.,* 12 Or. 474 (8 P. 548). If it be conceded that the equities of the plaintiff and the Swender Blue Print company are equal, that which is prior in time prevails. Since the record discloses that the Blue Print company has a later equity it was incumbent upon it to allege and prove facts showing a superior equitable claim. This it has not done.

The decree of the circuit court in dissolving the temporary injunction as against the Swender Blue Print company is reversed and one is here rendered, in accordance with the prayer of the complaint, enjoining the defendants or any of them having possession of such photostatic copies from using, selling, or otherwise disposing of them.

RAND, BEAN and BROWN, JJ., concur.