Argued September 11; modified November 13; rehearing denied
December 9, 1941

# CLATSOP COUNTY *v.* TAYLOR
## (119 P. (2d) 285)

Before RAND, BAILEY, LUSK and ROSSMAN, Associate Justices.

*James L. Conley,* of Portland (Walter Norblad, of Astoria, on the brief), for appellant.

*Garnet L. Green,* District Attorney, of Astoria, and *James G. Smith,* of Salem (Frank Spittle, of Astoria, on the brief), for respondent.

ROSSMAN, J. This is an appeal from a decree of the circuit court which sustained the validity of taxes levied against many parcels of real property which at the time of the assessments were owned by the Gearhart Park Company and which foreclosed against the affected properties the liens of the taxes. The plaintiff is Clatsop County and all of the properties are situated in that county. When this proceeding, which we shall term a suit, was begun one of the defendants was the Gearhart Park Company. At that time it owned all of the properties. None of the other defendants made an appearance. Robert B. Taylor, who purports to be substitute defendant for the Gearhart Park Company, is the appellant.

■ We shall first consider the motion filed by the plaintiff for a dismissal of this appeal. A proclamation issued by the governor January 7, 1935, pursuant to § 77-245, O. C. L. A., dissolved the Gearhart Park Company. We take judicial notice of that proclamation by virtue of § 2-502, subd. 3, O. C. L. A. The five-year period which §§ 77-246 and 77-259, O. C. L. A., grant to dissolved corporations to wind up their affairs ended January 7, 1940, for the Gearhart Park Company. Section 77-259 allows an additional five-year period for the maintenance of suits against dissolved corporations concerning their title to real property. According to a statement embraced in a written motion filed in the circuit court September 6, 1940, the Gearhart Park Company, on December 28, 1939, conveyed to the aforementioned Taylor all of its properties. The motion sought Taylor's substitution for the corporation as the defendant. It was presented, without notice to the plaintiff, to the Honorable Howard K. Zimmerman, judge of the circuit court for the twentieth judicial district. The order which it sought was granted.

In due time before the trial the Gearhart Park Company, following the procedure authorized by §§ 1-501, 1-502 and 1-503, O. C. L. A., had secured an order which disqualified Judge Zimmerman from hearing and trying this suit. Later the Honorable R. Frank Peters, judge of the circuit court for the nineteenth judicial district, was assigned to try this suit. After the entry of the order of substitution the plaintiff filed a motion for its vacation. The motion was based upon the following: the order which disqualified Judge Zimmerman, the absence of notice to the plaintiff before the motion for substitution was presented, and an alleged absence of statutory authority for the substitution of a party defendant in a proceeding of this character. October 21, 1940, Judge Peters signed an order which overruled that motion. Next, the notice of appeal was given. It was signed by the counsel who appeared in the circuit court for the Gearhart Park Company. Their names are followed by this designation: "Attorneys for Gearhart Park Co.; said defendant and Robert B. Taylor, as substitute defendant for said Gearhart Park Co." The notice states: "* * * You and each of you are hereby notified and will take notice that Robert B. Taylor, substitute defendant for Gearhart Park Company, hereby appeals * * *."

Section 1-311, O. C. L. A., says:

"No action shall abate by the death, marriage, or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue."

In support of its motion for a dismissal of the appeal, the plaintiff contends that Judge Zimmerman was disqualified to make the order of substitution, that our statutes do not authorize substitution of defend-

ants in suits of this character, and that an order which grants the plaintiff additional time to file its transcript was not made within the time allowed by law.

From the motion to dismiss, we quote the following: "The laws of the State of Oregon do not authorize a substitution of defendants in a tax foreclosure suit and such substitution of defendants *is entirely unnecessary.* * * *" From the brief submitted by the plaintiff in support of the motion, we quote: "The law is specific that no action shall abate 'by the transfer of any interest therein' and *no order of substitution of parties is required* * * *." (Italics ours.)

 It will be seen from the foregoing that at the time of the entry of the substitution order § 77-259, O. C. L. A., had granted to the Gearhart Park Company and other similar dissolved corporations an additional five-year lease on life to enable them to defend suits concerning their title to real property. Therefore, at that time the Gearhart Park Company had not become the victim of "death" "or other disability" within the contemplation of § 1-311, O. C. L. A. The mere fact that it conveyed its title to Taylor did not authorize the entry of an order for the abatement of this suit: *Phegley v. Swender Co.,* 133 Or. 146, 289 P. 500. After he had become owner, Taylor was in a position to defend this suit in the name of his grantor: *In re First and Farmers National Bank,* 145 Or. 150, 26 P. (2d) 1103. Hence, since Taylor was in position to maintain the defense, the substitution order was unnecessary. However, it had the virtue of placing upon the records the name of the real party in interest and of enabling him to defend his title in his own name. The plaintiff insists that § 69-816, Oregon Code Supplement 1935, as amended by 1937 Session Laws, Ch. 470 (repealed

by 1939 Session Laws, Ch. 485, § 23) demands that the defendant must be "the person appearing on the latest tax roll in the hands of the tax collector at the date of the first publication of such notice, as the owner." The words quoted are the language of the statute. Proceedings of this kind are in rem: § 69-816, Oregon Code Supplement 1935, as amended by 1937 Session Laws, Ch. 470, § 2. See further 1939 Session Laws, Ch. 334. Therefore, the property is the real defendant. In our opinion, the language just quoted does not prevent the real owner from defending his property in his own name when his identity is revealed.

■■ *Lovell et al. v. Potts et al.*, 112 Or. 538, 207 P. 1006, 226 P. 1111, and *Sprague v. Astoria*, 106 Or. 253, 204 P. 956, 206 P. 849, recognize that even a disqualified judge may sign routine orders like the order under attack. For that purpose he is at least a de facto judge. The subsequent order signed by Judge Peters cleared the order of substitution, signed by Judge Zimmerman, of whatever defects may have been therein. See 33 C. J., Judges, § 200, p. 1022.

In our opinion, the order of substitution was valid even though it may have been unnecessary: *E. J. Struntz Planing Mill Co. v. Paget*, 123 Or. 651, 262 P. 263, 263 P. 389.

The contention that an order secured by the defendant for additional time within which to file his transcript was not filed within the time required by § 10-807, O. C. L. A., is based, we believe, upon a misconception by the plaintiff of the various periods of time. Its filing was timely.

Having disposed adversely to the plaintiff of all contentions argued in behalf of the motion to dismiss the appeal, it follows that that motion is denied.

We shall deem Taylor as the defendant and our use of that term will refer to him.

The defendant makes many attacks upon the assessments and the procedure employed in this suit. He contends that the form of the summons is defective; that the properties were not properly described in the assessment rolls and in the subsequent procedure; that the time allowed by the summons for the appearance of the defendants was shorter than that granted by our statutes; that neither § 69-816, Oregon Code Supplement 1935, (which authorized the institution of suits for the foreclosure of tax liens) nor any other section of our laws authorizes the maintenance of this suit; that the certificates of delinquency upon which this suit is based, in violation of § 69-816, Oregon Code Supplement 1935, as amended by 1937 Session Laws, Ch. 470, § 2, were issued tardily; and that, in violation of subdivision 4 of § 69-242, Oregon Code 1930, noncontiguous parcels of land were assessed together.

A better understanding of the issues will be facilitated through mention of the following facts. The uncontradicted testimony of N. S. Rogers, valuation engineer for the state tax commission, indicates that the assessor of Clatsop county employs the same kind of record books and the same methods for the description of assessed property as are generally employed by assessors in this state. Parts of the properties involved in this suit consist of lots lying in the city of Gearhart Park and the remainder is unplatted acreage. All of the properties are in Clatsop county.

The defendant's contention that the form of the summons employed in this suit is defective is based upon the requirements of §§ 1-503 and 69-814, Oregon

Code 1930. The section first cited says that the summons shall recite

"in substance as follows: * * * 2. In other actions that if the defendant failed to answer the complaint, the plaintiff will apply to the court for the relief demanded therein."

Section 69-814 said:

"Summons shall be served and returned in the same manner as summons in a civil action is served in the circuit court."

That section of our laws, however, was amended by 1937 Session Laws, Ch. 470, p. 812, so as to read:

"On foreclosure of any certificate of delinquency held otherwise than by the county, summons shall be served and returned in the same manner as summons in a civil action is served in the circuit court."

The amended section was repealed by 1939 Session Laws, Ch. 485. This suit was begun in 1938.

The summons employed in the present suit stated:

" * * * You, and each and all of you, and also any and all other person, persons or parties, known or unknown, owning or claiming to own, or having or claiming to have, any lien or claim or interest in, on, or to the real properties hereinbefore described, or any part thereof, hereby are further notified to appear within sixty days after the date of the first publication of this Summons, exclusive of the date of said first publication, and defend this action or pay the amount provided by law for the redemption of said properties, and if you so appear you are instructed to serve a copy of your appearance, objections or answer on the undersigned attorney for Plaintiff at his post-office address as hereinbelow stated.

"If you fail so to do, judgment and decree will be entered in the above entitled court and cause foreclosing the liens of said taxes with interest thereon,

as shown by said certificates, plus accruing interest on said certificates at the rate of 8 per cent per annum from the 9th day of December, 1938, the date of issuance of such certificates, together with such costs as shall appear to be due upon each of such properties. Said judgment and decree will order that said properties be sold to Clatsop County for the satisfaction of the sums charged against each parcel of property as provided by law and as prayed for in Plaintiff's Complaint and Application for Judgment and Decree now on file in this Court and Cause. * * *''

The plaintiff, directing attention to the above-quoted words of 1937 Session Laws, Ch. 470, calls attention to the fact that at the time when this suit was begun the provisions upon which the defendant relies were applicable only to suits based upon certificates of delinquency ''held otherwise than by the county''. It urges that in 1938 the contents of the summons in suits instituted by a county were prescribed by subdivision 3 of § 69-807, Oregon Code 1930 (repealed by 1939 Session Laws, Ch. 485, § 23, p. 948).

■■ The circumstances, however, do not require us to construe the above statutes and their amendments. The appearance of the Gearhart Park Company was not special. It did not limit its appearance to a challenge of the regularity of the summons nor to an attack upon the service thereof. Its answer, besides presenting the contentions already noted concerning the summons, challenged the validity of the assessments and of the certificates of delinquency. It is evident that the defendant's appearance was general: § 10-607, O. C. L. A.

From § 1-617, O. C. L. A., we quote:

''A voluntary appearance of the defendant shall be equivalent to personal service of the summons upon him.''

It is unnecessary to cite authorities in substantiation of the statement that even where the contents of the summons is fixed by statute, as the defendant contends is true in the suit before us, a general appearance waives the failure to have employed the statutory form. If we assume in harmony with the defendant's contentions that the summons allowed a shorter time than the statutory period for the appearance, that irregularity was likewise waived by the general appearance of the Gearhart Park Company: *Fanton v. Byrum*, 26 S. D. 366, 128 N. W. 325, 34 L. R. A. (N. S.) 501; *Appeal of Floyd*, 31 Okl. 549, 122 P. 516; *Olson Land Co. v. Alki Park Co.*, 63 Wash. 521, 115 P. 1083, Ann. Cas. 1912D, 365; *State v. McElhinney*, 199 Mo. 67, 97 S. W. 159; *Tropical Investment Co. v. Brown*, 45 Cal. App. 205, 187 P. 133; and 4 C. J., Appearances, § 47, p. 1358. The abovementioned principles of law are applicable to suits for the foreclosure of tax liens: *State v. Iron Cliffs Co.*, 54 Mich. 350, 20 N. W. 493, and *The People v. Southern Gem Co.*, 332 Ill. 370, 163 N. E. 825. And see 4 C. J., Appearances, p. 1349, § 40. We conclude that the contentions made by the defendant which challenge the form and service of the summons are not available to him.

■ We shall now consider the contention advanced by the defendant that this suit lacks statutory authority. When this suit was begun there was pending in the same court another suit instituted by Clatsop County which sought the foreclosure of tax liens against a large number of items of real property. The defendants in that case were much larger in number than those in the present suit. None of them owned any of the properties involved in this suit. Neither this defendant nor the Gearhart Park Company was a party to that

suit. In the present one the defendants, other than Gearhart Park Company, are the Title & Trust Company, A. J. Prideaux, Frances T. Prideaux, the Port of Astoria, the City of Gearhart and whatever unknown persons assert claims to the properties described in the complaint. Only the Gearhart Park Company appeared. Citing § 69-816, Oregon Code Supplement 1935, as amended by 1937 Session Laws, Ch. 470, § 2, the defendant argues: "The statute provides for one general proceeding for the foreclosure of all tax liens held by a county at the time. This is a special proceeding and ran concurrently with the general proceeding pending at the same time. There is no statutory authority for such special suit." The material part of the statute last cited reads:

"After the expiration of three years from the earliest date of delinquency of taxes levied and charged on any tax roll, the tax collector, except as otherwise provided by law, immediately shall proceed to issue to the county a certificate or certificates of delinquency on any and all property on which taxes are delinquent, and shall file said certificate or certificates, when completed, with the county clerk. Thereupon the tax collector, with the assistance of the district attorney, shall proceed to foreclose in the name of the county the tax liens embraced in such certificate or certificates. In all foreclosures by a county, notice shall be given exclusively by publication in one general notice, describing the property as the same is described on the tax rolls. Such notice shall be published once a week for not less than four successive weeks, and it shall not be necessary to mail any copy of such notice to any defendant named or any person interested in any property described therein. A general certificate in book form, covering all properties described therein, may be issued to the county and one general proceeding may be brought on the part of the county to foreclose the liens against said properties. All persons interested

in any property involved in any such proceeding may be made codefendants, and if unknown, may be named therein as unknown owners, and the publication of such notice shall be sufficient service on all persons interested. The name of the person appearing on the latest tax roll in the hands of the tax collector at the date of the first publication of such notice, as the owner of any property therein described, shall be considered and treated as the owner of said property, and each such proceeding shall be a proceeding in rem against the property itself. * * *''

The defendant depends upon that part of the quoted statute which says: ''In all foreclosures by a county, notice shall be given exclusively by publication in one general notice.'' He argues that if the statute is construed so that it will limit a county to one suit only each year for the foreclosure of tax liens, costs assessed against each defendant upon the entry of decree will be minimized and there will be avoided the possibility of a delinquent taxpayer whose name is not included in the general summons being misled into a belief that no proceeding will be taken against him that year.

When the general suit—we adopt the defendant's phrase—was begun there was pending another suit instituted by Clatsop County against the Gearhart Park Company based upon the same certificates of delinquency that are involved in this suit. The record indicates that the Gearhart Park Company and the holders of liens inferior to the county were the only defendants in that proceeding. That suit was later dismissed. Then the one under review was begun.

The part of the statute upon which the defendant relies lends some support to his contention that one and only one suit for the foreclosure of delinquent tax certificates is authorized. But the same statute contains language in conflict with the provision just

mentioned. It does not require the tax collector to issue only one certificate of delinquency for all delinquent property. Its words are "issue to the county a certificate or certificates of delinquency". The number of certificates to be issued is therefore optional. The statute also says: "A general certificate in book form, covering all properties described therein may be issued to the county and one general proceeding may be brought on the part of the county to foreclose the liens against said property." It will be observed that the permissive verb "may" is used and the mandatory word "shall" is foregone. Further, the session law says: "All persons interested in any property in any such proceeding may be made codefendants."

■ It is apparent from the language above quoted that the statute contains conflicting provisions and that its meaning is ambiguous. That being true, the rules of statutory construction may be employed. Generally, in such instances light is gained by a study of the statute's antecedents. Before its amendment in 1937 the act under consideration was § 69-816, Oregon Code 1935 Suppl., and read: "* * * provided that for the purpose of this section and in all foreclosures by a county summons may be served or notice given exclusively by publication in one (1) general notice. * * *" Thus, it is seen that one of the effects of the 1937 amendment was to substitute for the permissive word "may" in the former act the mandatory word "shall" in the amended statute. If this were all that we knew about the situation a conclusion would be virtually inescapable that one and only one suit was authorized. But when the act had its pre-1937 form, § 69-808, Oregon Code 1930, provided:

"The sheriff of the county within ten (10) days after the first publication of summons in suits to fore-

close tax certificates of delinquency by the county, shall forward by mail to each owner of any of the property upon which foreclosure is begun a copy of the published summons. * * *''

It will be observed that notwithstanding this requirement (notice by mail), § 69-816 provided that notice should be ''given exclusively by publication.''

In *Watson v. Jantzer*, 151 Or. 1, 47 P. (2d) 239, decided in 1935, these two laws and their antecedents received consideration. The decision commented upon the conflict in their requirements and held that since the one which said that ''summons may be served or notice given exclusively by publication'' was a later enactment than the one which required notice by mail, the latter was repealed by implication when the other was enacted into law. At the next session of the legislature § 69-808 was repealed. See 1937 Session Laws, Ch. 470, subd. 7. Obviously, the purpose was to weed out of the books a dead law. Another enactment of that session (1937 Session Laws, Ch. 470, § 2, from which we have already quoted) gave to § 69-816 the form which it had when this suit was begun; that is, it substituted ''shall'' for ''may'' so as to make the section under consideration read ''notice shall be given exclusively by publication''. If an inference is warranted that there existed between *Watson v. Jantzer*, supra, and these two statutory changes the relationship of cause and effect, then it is evident that the purpose of substituting ''shall'' for ''may'' was not to require that all delinquent taxpayers must be included in an omnibus suit, but to make more clear the legislative purpose that publication of the summons was sufficient and that mailing of notice was not required. Apparently, the author of the repeal of § 69-808 was

doubtful whether repeal alone sufficed to get rid of the requirement of notice by mail, and in order to make his purpose unmistakably clear he changed "may" to "shall" in § 69-816. If this inference is permissible, we have an explanation for the statutory amendments and repeals. It would also afford a means of resolving the ambiguous language of § 69-816 upon which we have been commenting. We believe that the inference is reasonable and know of nothing at variance with it. We, therefore, resort to it. Under this line of reasoning and construction, effect is given to every part of § 69-816. And the parts of that statute previously quoted which contemplate that more than one suit may be filed are not left without meaning. Moreover, in the absence of clear language to the contrary, a holder of liens against many properties owned by different individuals should not be restricted to one and only one annual proceeding.

Before arriving at a conclusion, however, we shall consider the two aforementioned reasons submitted by the defendant in favor of a construction which restricts to a single suit. The evidence indicates that the additional cost of publication of the summons necessitated by this special suit was between $40 and $50, but no cost bill was filed and hence this additional expense was not thrown upon the delinquent taxpayers. As we have already indicated, when the general proceeding was begun, a suit was pending against the Gearhart Park Company upon these same certificates of delinquency and that fact the district attorney thought rendered it impossible to include that owner in the general suit. It is manifest that since, at the very time when the general proceeding was begun, the county, in an action then pending, was seeking to foreclose its liens against the Gearhart Park Company,

that owner could not have been deceived into a belief that its delinquency would be permitted to continue for another year. However, these matters are immaterial in view of the express words of the statute. We conclude that the present suit is within the contemplation of § 69-816 as amended by 1937 Session Laws, Ch. 470, § 2.

 The next contention advanced by the defendant is that the certificates of delinquency were void because they were not issued immediately (so the defendant says) after three years from the earliest date of delinquency. This contention is based upon the requirements of § 69-816 as amended by 1937 Session Laws, Ch. 470, § 2. The sections of that statute, which we have already quoted, include the part upon which the defendant relies as support for the present contention. By returning to the quoted language it will be seen that it requires the tax collector "except as otherwise provided by law" to "immediately" issue to the county certificates of delinquency "after the expiration of three years from the earliest date of delinquency".

The words "except as otherwise provided by law" were not a part of the antecedents of the 1937 statute. Before 1937 the effect of the financial depression which began in 1929 had manifested itself in dwindling returns received by the tax collector. The ever-mounting list of tax delinquent properties became a legislative problem and shortly legislation was adopted whereby the delinquent taxpayer was granted extensions of the time within which to pay his taxes. Instances are 1933 Session Laws, Ch. 462, and 1935 Session Laws (special session) Ch. 5. In order to conform the provisions of § 69-816, Oregon Code 1935 Suppl., to the liberalized delinquent tax payment provisions

provided by these laws, the words "as otherwise provided by law" were added to § 69-816. These legislative developments, as well as everyday observation of the operation of tax statutes, indicate that the requirement that the tax collector shall "immediately" issue certificates of delinquency was intended for the benefit of the county; it certainly was not intended to benefit the delinquent taxpayer; he not infrequently hopes that time will somehow solve his difficulties. The above being true, the nonfeasance of the tax collector could not inure to the benefit of the delinquent taxpayer and cancel his indebtedness: Cooley on Taxation (4th ed., § 510). Moreover, the requirement that the tax collector issue the certificates "immediately", in our opinion, is directory and not mandatory. Reasons similar to those employed in *Childs v. Marion County,* 163 Or. 411, 97 P. (2d) 955, brought us to our conclusion. We are satisfied that the contention under consideration is without merit.

■ We shall now consider the contention of the defendant which states that "the descriptions of property throughout—whether in the assessment rolls, tax rolls, certificates of delinquency, summons or complaint—are indefinite, uncertain, inaccurate and insufficient to identify the property". This attack is confined largely to the unplatted acreage. Concerning the city lots and blocks the defendant's brief says: "Where the property has been divided into lots and blocks, the description, generally speaking, is adequate."

Section 69-231, Oregon Code 1930, as amended by 1933 Session Laws, Ch. 142 (§ 110-335, O. C. L. A.) says:

"The assessor shall, each year, procure for the county a blank assessment roll, and forthwith proceed to assess all taxable property within the county * * *.

Said assessor shall enter in such assessment roll a full and complete assessment of such taxable property including a full and precise description of the lands and lots owned by each person therein named, on March 1, of said year. * * * And provided further, that where the name of the true owner, or the owner of record, of any parcel of real property shall be given, such assessment shall not be held invalid on account of any error or irregularity in the description; provided, such description would be sufficient in a deed of conveyance from the owner; or on account of any description upon which, in a contract to convey, a court of equity would decree a conveyance to be made.''

Section 69-242, Oregon Code 1930, as amended by 1935 Session Laws, Ch. 274, § 6 (§ 110-336, O. C. L. A.) states:

''The assessor shall set down in the assessment roll, in separate columns, and according to the best information he can obtain: * * *

''(2) A description of each tract or parcel of land to be taxed, specifying under separate heads the township, range and section in which the land lies, according to the government survey, except where the same is described by metes and bounds; or if divided into lots and blocks, then the number or numbers thereof; provided, however, that the assessor shall describe lands in tracts not larger than a quarter-section when so requested by the owner or mortgagee thereof.

''(3) The number of acres and parts of an acre of each parcel assessed, as nearly as can be ascertained, unless the same be divided into blocks and lots.''

Section 69-243, Oregon Code 1935 Suppl., reads:

''The assessment roll of each county shall be made out in tabular form, in separate columns, with appropriate headings, for assessments of properties, extensions of tax levies, * * *. Assessment rolls may either be bound in volumes or in loose leaf form; * * *''

Section 69-246, Oregon Code 1930 (§ 110-340, O. C. L. A.) reads:

"If the land assessed be less or other than a subdivision according to the United States survey, unless the same be divided into lots and blocks so that it can be definitely described, it shall be described by giving the boundaries thereof, or by reference to a description thereof by book and page of any public record of the county where the same may be found, or in such other manner as to make the description certain."

Subdivision (a) of § 69-820, Oregon Code 1930, as amended by 1937 Session Laws, Ch. 470, § 3, requires that courts "shall hear and determine" suits of this kind "in a summary manner". Subdivision (b) of the same section says:

"In all judicial proceedings for the collection of taxes, assessments and penalties, interest and costs thereon, all amendments may be made which can be made in any personal civil action; and no assessment of property or charge for any of said taxes shall be considered illegal on account of any irregularity in the assessment rolls, * * * or on account of the property having been charged or listed in the assessment or tax rolls without any name, or with any other name than that of the owner; and no error or informality in the proceedings of any of the officers connected with the assessment equalization levying or collection of taxes shall vitiate or in any manner affect the tax or the assessment thereof; * * *"

Section 69-715, Oregon Code 1930 (§ 110-820, O. C. L. A.) says:

"Whenever at any stage in the collection of taxes, the officer having charge of the rolls shall discover errors or omissions of any kind therein he may properly correct the same to conform to the facts in whatever manner may be necessary to make such assessment, tax or other proceeding whatsoever regular and

valid, such correction to be made in red ink, or otherwise distinguished, * * *''

Section 69-233, Oregon Code 1930 (§ 110-347, O. C. L. A.) provides:

''The assessor of each county shall make a plat of the government surveys and of all town plats within his county, and shall take note therein, or in a present ownership book or list, the owner of each tract of land, and of each town lot; * * * which said plats, present ownership book or list and taxpayers' index shall be public records * * *.''

Section 69-239, Oregon Code 1930 (§ 110-344, O. C. L. A.) says:

''At the time prescribed by law the assessor in each county shall ascertain by diligent inquiry the names of all persons in his county who by law are assessable by him, and make out an assessment roll of all such property * * *''

Section 69-247, Oregon Code 1930 (§ 110-341, O. C. L. A.) authorizes the assessor to employ ''initial letters, abbreviations, figures, fractions and exponents to designate the township, range, section, part of a section, distance, course, bearing and direction and also the number of lots and blocks or part thereof'' in the performance of the above-mentioned duties.

Section 69-704, Oregon Code 1930, as amended by 1933 Session Laws, Ch. 446, and 1935 Session Laws, Ch. 305, outlines the manner in which the assessment roll prepared by the assessor becomes the tax roll upon its receipt by the tax collector.

The above appear to be the only statutory provisions having a direct bearing upon the contention made by the defendant that his property was not properly described upon the assessment roll, etc. Substantially

the same descriptions were employed in the assessment rolls, tax rolls, certificates of delinquency, in the summons and complaint.

The various papers just mentioned identified the Gearhart Park Company in each instance as the owner of the parcel of property. The defendant concedes that at the time of the assessment of the tax and at the time when this suit was begun the Gearhart Park Company was owner.

The descriptions above mentioned were reviewed at length with O. W. Taylor when he was upon the witness stand. He had been the president-manager of the Gearhart Park Company from the time of its organization and was intimately acquainted with all of its properties. As a witness, he experienced no difficulty in identifying the properties described in the tax and assessment rolls. We also observe that after this suit was begun sufficient payments were made upon the properties described in nine of the certificates of delinquency to gain their dismissal from this proceeding. At the same time other payments were received upon parts of the properties described in four other certificates of delinquency sufficient in amount to release those properties from this suit. So far as we are advised, no difficulty with the descriptions was experienced in any of these thirteen instances. The order of dismissal in many instances, in describing the withdrawn properties, employed the descriptions used in the complaint.

Upon several occasions the assessor, at the request of the Gearhart Park Company, gave it statements of the delinquent taxes. So far as we are able to learn from the record, these statements served their purpose. The aforementioned O. W. Taylor freely conceded that he never gave to the assessor any descrip-

tions of the properties better than those which the assessor was employing; in fact, he never handed to the assessor any descriptions whatever. Since many of these taxes run back to the year 1926, it seems fair to infer that the descriptions under review over a long period of time served their purpose and were understood by the delinquent taxpayer as well as by the assessor.

This opinion would reach interminable length if we gave a detailed statement of the attack upon each of the numerous certificates of delinquency and a delineation of our disposition of the attack. Certificate No. 2161 affords a fair basis for a statement of the nature of the descriptions and of the defendant's criticisms thereof. It is the first certificate specifically mentioned in the defendant's brief. The latter's criticism of this one is more detailed than that of any of the others, yet we observe that after the institution of this suit all of the delinquent taxes against the property mentioned in certificate No. 2161 were paid and that that property was dismissed from this suit. But, since the description employed in that certificate affords a fair basis for outlining all of the descriptions and the defendant's criticism thereof, we shall now quote it. It follows:

| | "Sec. | Twp. North | Range West W. M. |
|---|---|---|---|
| "As des. in Book 94, Page 508, Record of Deeds) Except volumes and additions ) Tract No. 3 ) | 3 | 6 | 10" |

The chief deputy county assessor of Clatsop county, M. Cosovich, explained that the terms "except volumes and additions" which appear in the description mean "tracts sold and tracts acquired" since the execution of the deed mentioned in the description; that is, the deed recorded in Volume 94, Book 508,

Records of Deeds. The Gearhart Park Company was constantly engaged in the sale of portions of its properties and at one time made many purchases.

Certificate No. 2161 gives the name of the true owner. Thus, the demands of § 69-239, Oregon Code 1930, and of § 69-231 as amended by 1933 Session Laws, Ch. 142, were met in that particular.

The first identifying fact which the assessor used as descriptive material was "Book 94, Page 508, Record of Deeds". It will be recalled that § 69-231, Oregon Code 1930, as amended by 1933 Session Laws, Ch. 142, says that no description shall be deemed invalid if it "would be sufficient in a deed of conveyance" and that § 69-246 authorizes assessors to identify properties "by reference to a description thereof by book and page of any public record of the county where the same may be found". Therefore, the assessor's reference to the deed records was authorized. The defendant does not contend that the reference to the deed records was inaccurate.

On page 508 of Volume 94 of the deed records of Clatsop county is a copy of a deed executed in 1918 by the Title & Trust Company, as grantor, to the Gearhart Park Company, as grantee. The copy is before us as Exhibit 4. The defendant, in the words which we will now quote from his brief, makes his criticism of this part of the description: "Exhibit 4 describes several hundred acres of property much of which, according to the testimony of Mr. Taylor (Tr. p. 52 et seq.) has not been owned by the objector for many years. Now, we understand that the tax rolls, certificates of delinquency and summons and complaint were referring to a small tract of only a few acres known to the assessor as Tract 3 which, being less than a

quarter section, should have been described by metes and bounds and the acreage given * * *.'' But, by referring back to § 69-242 as amended by 1935 Session Laws, Ch. 274, it will be recalled that areas not larger than a quarter section need be described by metes and bounds only upon the request of the owner.

Possibly the defendant's use of the term ''several hundred acres'' is an indulgence in a slight extravagance and his other term ''only a few acres'' is a journey in the opposite direction; yet we shall go ahead as though the criticism employed accuracy in both of these details.

We have mentioned the fact that the Gearhart Park Company was constantly engaged in the sale of properties which it owned. All of these properties were in or near the city of Gearhart. In fact, the record seems to indicate that all of the properties lay within or very close to the Philip Gearhardt Donation Land Claim. It was the recurring sales of small tracts which caused the property described in the aforementioned deed record to be reduced to the limited size (''only a few acres'') mentioned in the defendant's above-quoted language.

It will be recalled that the challenged description, besides giving the name of the owner and a reference to the deed records, employs as an additional identifying term the words ''Tract No. 3''. That tract, according to the assessor's records, contained 17.21 acres. The quantity is not disputed. We shall now describe the manner in which tract numbers came into use in the office of the assessor of Clatsop county.

The assessor maintained a loose-leaf plat book. Section 69-243, as amended by 1935 Session Laws, Ch. 274, § 7, authorizes the use of such books. See

*Bagley v. Bloch*, 83 Or. 607, 163 P. 425. In that decision the plat book is referred to as a "block book" but that is merely a different name for the record. Section 69-233 says: "Said plats, present ownership book or list and taxpayers' index shall be public records."

Page 25 of the plat book is before us. It covers sections 1, 2, 3, 10, 11, 12 and parts of 4 and 9, Township 6, North of Range 10, West of the Willamette Meridian. It includes all of the properties involved in this suit. The section lines, quarter section lines, boundaries of platted tracts and some of the physical features of the area are drawn in ink upon the plat. Unplatted areas are drawn in pencil. These unplatted areas which were subject to change by subsequent deeds, Cosovich explained, were drawn in pencil so that their boundaries could be altered when parts of them were sold. Written upon the outlines of each unplatted tract in pencil are the name of the owner, references to deed records, and numerals like No. 2, No. 4, etc.

The area of land shown on page 25 of the plat book is more than three miles long and two miles wide. The page including its margin is 20 by 30 inches. Hence, the scale is very small and the smaller tracts of land are represented by spaces too limited in size to permit the entry of much identifying matter. Due to that circumstance, the assessor employed auxiliary maps. One of these is before us. It shows the area in which all of the defendant's unplatted properties lie. Its scale is one inch to two hundred feet. Most of the representations of the tracts which appear upon it bear the name of the owner and the quantity of acreage included within the tract. In many instances the representations of the tract bear penciled references to the

deed records. Upon all the defendant's tracts are numerals like No. 2, No. 7, etc. Upon that part of the plat book which represents the Gearhardt Donation Land Claim there is a penciled entry which says "See new Plat E-6". The auxiliary map in the assessor's office was entitled Plat E-6. It is a blueprint and we will refer to it as the blueprint. It was kept by the assessor in a pasteboard tube which was marked by him "E No. 6, Map of Gearhart Park Co., Division of Property". The testimony indicates that other blueprints of other areas were used by the assessor and that he had an appropriate file for each, identified by file numbers similar to E No. 6. Blueprint map E No. 6, which, as we have stated, was drawn to scale, gives the starting points of various surveys and also indicates section lines and a part of the lots, blocks and streets of the city of Gearhart. It likewise bears indications of Neacoxie creek, the state highway, the right of way of the Spokane, Portland & Seattle Railroad, and the shore line of the ocean. The fact that a property owner could readily locate his property from this map is indicated by the testimony of Mr. Taylor who, as a witness, readily recognized the Gearhart Park Company's properties with the blueprint before him. Referring to this map, Cosovich swore that it was a part of the public records of the assessor and that the public had free access to it. Rogers, whom we have already mentioned, when shown the aforementioned page of the plat book and the blueprint, testified: "The general practice, the universal practice over the state, is to make a plat book on a scale of from 4 to 8 inches to the mile for all of the legal descriptions of the government surveys. And to prepare supplementary maps or auxiliary maps showing in detail the unplatted areas, donation land claims or properties too small to

be shown intelligently on the small scale plan.'' He said that assessors employed the tract methods for identifying property because it eliminates ''the long procedure of writing up the full metes and bounds description. He refers to the deed record and also to the tract number which coincides with the deed record.''

Cosovich, as a witness for the defendant, gave the reasons why the blueprint map was prepared. Before quoting from his testimony, it seems pertinent to state that since 1926 he had conferred many times with Mr. Taylor concerning the taxes levied upon the properties of the Gearhart Park Company. He testified: ''Mr. Taylor had a lot of property in Gearhart, 300 or more acres; he had a hard time knowing certain numbers of pieces when they were sold out. With his consent, we conceived the idea of having a blueprint made and dividing the blueprint and designating it by numbers, No. 1, 2, 3, etc. He thought that a very good idea and that is how that was brought up.'' The conversation and the preparation of the map took place in May, 1931. Upon cross-examination, Cosovich added: ''Years ago, this Gearhart Park property was assessed in a lump sum between two and three hundred acres if my memory serves me correctly, and on numerous occasions they asked for cut-outs for certain pieces of property whether one acre, five acres, whatever it would be, and it got to be such a mess we had to find ways and means of having it more simple to see where each piece was. Mr. Taylor happened to be in the office talking to me about it and we asked about it and suggested this plan as a more satisfactory way to him. We had the county surveyor make the plat for us, and after the plat was made I put numbers on it designating each tract. I showed it to him when he was in the office and there was never any objection made to it.'' Coso-

vich swore that after the map's preparation he used it in conferences with Taylor concerning taxes.

Mr. Taylor, as a witness, could not remember having seen the map until quite recently, that is, a few months before he testified. He, however, mentioned ill health and failing hearing. His memory faltered on many occasions when he attempted to reply to questions put to him. Without casting any aspersions upon Mr. Taylor's sincere efforts to tell the truth, we are strongly inclined to believe that Cosovich's above-quoted explanations of the origin of the blueprint and its subsequent use should be believed. In fact, Taylor testified: "On the statements we would get such numbers were mentioned and that is the first evidence we had of the numbering on it." By statements he meant tax statements, and by numbers he meant the afore-mentioned tract numbers. Having given that testimony, Taylor was asked: "Did you know what it meant when you got those statements?" and answered, "Not until we inquired about it to find out where the land was." That testimony confirms Cosovich's about the use of the map and Taylor's familiarity with it.

As we have said, the assessor employed the same description in the assessment roll, tax roll, tax statement, certificate of delinquency, etc. The description was never varied in any material particular. Anyone who possessed a tax statement containing the description now under consideration and who desired to locate the property would consult the plat book which contained the page showing Section 3, Township 6, North of Range 10. Upon that page in Section 3 he would find a representation of the Gearhardt Donation Land Claim, and would also find that a part of that area was segregated into a smaller part marked "No. 3". It will be recalled that a part of the description with

which we are dealing is "Tract No. 3". Marked upon this smaller area he would find

"17.7 A.
.49 Hwy.
————
17.21 A."

Upon the area which represents the Gearhardt Donation Land Claim he would read the following reference: "See new plat E-6." Turning to that plat, which is the aforementioned blueprint, he would see an area plainly entitled "No. 3" and bearing the further identifying data:

"17.7 A.
.49 Hwy.
————
17.21 A."

That part of the blueprint, as already said, is a large scale representation of the assessed item of property. The blueprint, including as it does representations of the initial points of pertinent surveys, section corners, etc., would enable him to locate with precision, upon the ground, the assessed property.

The defendant, however, argues that the blueprint map is merely a paper which the assessor contrived for his own convenience, and that it is not a public document. However, the testimony of Cosovich is to the contrary, and that of Rogers indicates that the use of auxiliary maps "is the general practice followed in at least 30 of the counties" of this state. Section 69-246, Oregon Code 1930 (§ 110-340, O. C. L. A.) exacts of the assessor no prescribed method of description, but permits him to proceed "in such other manner as to make the description certain." Taxation, including methods for the description of assessed property, is

a practical matter. The general language of § 69-246 assigns much to the practical good sense of the assessor. We believe that the employment of tax tracts and auxiliary maps is within the purview of § 69-246. We are satisfied that the plaintiff's supplementary and auxiliary maps, incorporated as they are into the plat books by appropriate references written upon the latter, are public records. They are, in fact, parts of the plat books. This opinion, we believe, is not at variance with § 69-233, Oregon Code 1930.

■ The defendant calls attention to the fact that the plat book and blueprint, unlike the description appearing in the delinquency certificates, do not employ the word "Tract". They use nothing more than No. 3, No. 5, etc. But the defendant does not say that he was misled thereby nor that he failed to understand what was meant. The blueprint shows nothing but tax tracts and such other features as are necessary to locate the tracts. Very likely it would be better to write "Tract" in front of the numerals, but we do not believe that the absence of that word invalidated the assessments.

■ It is our belief that the use of the plat book, auxiliary map, and the division of unplatted property into tax tracts is warranted by the sections of our laws previously cited.

■■ There remains for consideration the effect of an occasional error made by the assessor in his employment of the method of description just reviewed. We will now consider certificates of delinquency Nos. 2167 and 2168. The attack upon them follows in defendant's brief immediately after his challenge of the sufficiency of certificate No. 2161. The properties described in certificates Nos. 2162, 2163, 2164, 2165 and 2166, like those described in No. 2161, gained their dismissal from

this suit by payment of their delinquent taxes. Certificates Nos. 2167 and 2168, like all of the other certificates mentioned in the complaint, correctly named the Gearhart Park Company as owner. Both of them employed as part of the descriptive data: "As des. in Book 94, Page 508, Record of Deeds." No. 2167 follows this material with "Tract No. 9" and 2168 follows the reference to the deed records with "Tract No. 10" and "Except as des. in Book 134, Page 534, Record of Deeds". The defendant's criticism of these two descriptions is thus stated in his brief: "Certificates Nos. 2167 and 2168, referring respectively to Tract 9 and Tract 10, refer to property nowhere within the description of Book 94, Page 508. So-called Tract 9 covers approximately 65 acres of land and so-called Tract 10 covers approximately 23½ acres, and both lie wholly outside the description in Book 94, Page 508." The plaintiff concedes the error. Its brief says: "There appears to be a clerical error concerning the reference to Deed Book 94, Page 508. Tract No. 9 described in Certificate 2167 and Tract No. 10 described in Certificate 2168 are located within the description shown by Deed Book 114, at Page 610." It will be seen that the certificate correctly gave the owner's name and that the descriptions identified both properties by their correct tract numbers. It will be recalled that § 69-820, Oregon Code 1930, as amended by 1937 Session Laws, Ch. 470, subd. (b), authorizes courts to disregard immaterial errors contained in the descriptions of property and that § 69-231, Oregon Code 1935 Suppl., directs that erroneous descriptions shall not affect the validity of assessments provided that the name of the true owner is given and that the description would be acceptable to a court of equity in a suit to enforce a conveyance. In *Kelly v. Herrall*, 20 Fed. 364 (Federal

Circuit Court for the District of Oregon) Judge Deady, in sustaining the validity of a description employed in a tax assessment into which an erroneous detail had crept, said: "In Cooley, Tax'n, 282, it is said that in listing land for taxation 'It must be described with particularity sufficient to afford the owner the means of identification and not to mislead him'." He then employed the legal principle that "a mere false description does not make an instrument inoperative". From 61 C. J., Taxation, § 883, p. 713, we quote:

"If the description sufficiently identifies, entry of an additional and erroneous item of description which is not such as to mislead does not render the description fatally defective."

The plaintiff does not claim that anyone was misled by the erroneous reference to the deed records. In fact, some of the property embraced within certificate No. 2167 discharged the delinquent taxes assessed against it and in that way gained its release from this proceeding. We do not believe that the two descriptions were fatally defective.

■ The description employed in certificate of delinquency No. 2169 mentions no tract number. After giving the name of the owner as the Gearhart Park Company, it uses the following as the description of the property: "As des. in Book 114, Page 610, Record of Deeds." It adds that the property is located in Section 10, Township 6, Range 10 West. From the plaintiff's brief we now quote: "Reference to Section 10 in the certificate is a clerical error as this property is located in Section 9." The deed recorded in Book 114, Page 610, is a lengthy document which describes four items of property by metes and bounds. The description of the first is very long. The second description is some-

what shorter. The third tract, according to the plaintiff, is the one intended. These three descriptions are followed by the following: ''Excepting, however, from the lands above described, the following: Beginning at the point * * *.'' Here follows an extensive recital of descriptive matter covering an additional page. It seems clear that neither an owner nor a prospective bidder could have known from the description employed in this certificate of delinquency which of the properties was intended. We are convinced that this certificate of delinquency is fatally defective.

■ Certificate of delinquency No. 2170 describes the assessed property thus:

| | "Sec. | Twp. North | Range West W. M. |
|---|---|---|---|
| 122 428 "As des. in Book 87 Page 337 Record of Deeds | | | |
| Except volumes | 10 | 6 | 10" |

We now quote from the plaintiff's brief: ''The property described in this certificate as disclosed by reference to Deed Book 122, at page 428 (Defendant's Exhibit '6B') comes within the boundaries of the description of that deed wherein it states: '* * * it being intended hereby to convey. to the grantee herein all land standing in the name of the grantor in the Gearhart or Luke donation land claims * * *.' The description in this certificate refers to the small tract of land, being Tract No. 12 pointed out on the map.'' It must be remembered that the description in the delinquency certificate mentioned no tract number. We have the above-mentioned deed before us (Exhibit 6B) and observe that it conveys several scores of lots and many unplatted properties, all located in Gearhart Park and the additions thereto. Its final paragraph is the language which we quoted from the plaintiff's brief,

that is: "it being intended hereby to convey to the grantee herein all land standing in the name of the grantor in the Gearhart or Luke donation land claims." It is manifest from the further language which we quoted from the plaintiff's brief that the tax affects only a "small tract of land" in one or the other of those donation land claims; but the description does not even indicate which of the two. It is our belief that this description, like the one employed in certificate of delinquency No. 2169, was wholly inadequate to advise either an owner or a prospective bidder of the property intended. It is fatally defective.

■ Certificate of delinquency No. 2172, after correctly listing the name of the Gearhart Park Company as owner, employed the following description: "Gearhart Park as des. in Book 122, Page 301, Record of Deeds. Tract of land lying east of Block No. 1, and west of Neacoxie Creek." The map of Gearhart Park was properly recorded in Clatsop county. From the deed just mentioned, we quote: "Unplatted portion between Lots 27 & 28 & Neacoxie Creek in Block 1 * * * in Gearhart Park."

We turn now to the map of Gearhart Park. The two most easterly lots in Block 1 are 27 and 28. Each is 50 feet wide and 100 feet long. They face north and south. About 100 feet to the east of the easterly line (200 feet long) of these two lots is the west bank of Neacoxie creek. The area between these two lots and the creek is unplatted. This plot of ground, which it will be seen is roughly 100 by 200 feet in area, is bounded on the north by the south line of First street and on the south by the north line of Second street. We have already mentioned its easterly and westerly boundaries. The defendant's criticism of the descrip-

tion is based upon the contention that this unplatted area of 100 by 200 feet is a part of Block 1. Very likely this contention is true, but we do not believe that the employment of the phrase "lying east of Block No. 1" instead of saying "lying east of the easterly lines of Lots 26 and 27 of Block 1" misled anyone. The author of the criticized term failed to scrutinize the dedication map sufficiently closely to observe that the unplatted area was a part of Block 1. The error was easy of commission—the unplatted area, unlike the lots, bore no number or other feature identifying it with the block. But notwithstanding this error, the author of the description made his meaning manifest. A consultation of the deed recorded in Book 122, Page 301 (that reference being a part of the description) would correctly indicate to anyone interested in the property the area intended. It is our belief that this criticism discloses no fatal error.

We have considered carefully all of the other descriptions employed in the remaining certificates of delinquency and the defendant's criticisms of them. His contentions concerning these remaining certificates do not present any issues substantially dissimilar to the ones above reviewed. We find it unnecessary to prolong this decision with quotations from these descriptions and a restatement of the legal principles applicable to them. It is our belief that the defendant's contentions concerning them are without merit and that the descriptions are sufficient.

 The defendant's remaining contention is that noncontiguous parcels of land were assessed together. This contention is based largely upon the manner in which the city lots were entered upon the assessment and tax rolls.

Section 69-242, Oregon Code 1930 (§ 110-336, O. C. L. A.) reads:

"The assessor shall set down in the assessment roll, in separate columns, and according to the best information he can obtain * * *

"4. The full cash value of each parcel of land taxed.
"5. * * *"

*Guthrie v. Haun*, 159 Or. 50, 76 P. (2d) 292, referring to the provision of our laws just quoted, says:

"In our opinion, this statutory rule means that two or more disconnected parcels shall not be assessed together but, when lots are contiguous and are owned by the same person, they may be assessed as one parcel of land."

In support of his contention that the principle of law just mentioned was violated in the assessments under attack, the defendant produced in the trial court pages of the assessment and tax rolls of Clatsop county. A number of these pages were received in evidence and were marked "Defendant's Exhibit 10". How many were received is not indicated by the record, but some photostatic copies of assessment and tax rolls are before us and each is marked Exhibit 10. These photostatic copies are small scale reproductions of the pages. The photographic process rendered many of the entries so blurred that they are illegible and in some instances parts of the page in the developing process failed to develop. The assistance of a magnifying glass is required before most of the pages can be read. Whether all pages that bear upon the contention now are before us, we do not know. The defendant's brief mentions specifically none of the pages. The pages have several columns; one column provided for the entry of the taxpayer's name; another is en-

titled "Value of Each Lot"; the next has the heading "Value of All Lots"; other columns are provided for the entry of the school district's tax, the Port of Astoria tax, etc. Upon one of the pages under the heading of "Value of Each Lot" appears the amount $100. In the next column entitled "Value of All Lots" appears the sum $300. It is manifest that all three lots were deemed worth $100 each. All of the entries upon the assessment and tax rolls which concern city lots are similar to these; that is, each lot was separately valued. In order to conserve space, the total value of all lots, each having the same value, was placed in the next column. The multiple used in deriving the total when employed as a divisor yields the amount of tax levied against each lot. In this way space was conserved and the convenience of all parties was served. We do not believe that this method of making the entries upon the assessment and tax rolls violated the above-quoted principle of law. This contention, in our opinion, is without merit.

We have carefully examined all other contentions made by the defendant but have found no merit in them. We have not mentioned every authority which he cites, but they have not escaped our attention.

■■ It follows from the above that only two of the certificates of delinquency attacked by the defendant are fatally defective. The county argues that it was necessary for the defendant to tender into court "that which was fairly and equitably due by way of taxes upon his property" before contesting the validity of the levies. However, the defendant's contentions did not concern the amount of the tax (as in *Welch v. Clatsop County*, 24 Or. 452, 33 P. 934) but the validity of the tax. He claimed that the levy was void because

of the inadequacy of the notice that was given (through inadequate description of the property) when the assessment was made. That contention, so far as it is based upon certificates of delinquency. Nos. 2169 and 2170, we have sustained. The result, of course, is that the levies in those two instances are void and hence the county possesses no lien based upon those levies subject to foreclosure. The present proceeding is not within the purview of § 69-845, Oregon Code 1930, as amended by 1937 Session Laws, Ch. 470, § 6 (repealed by 1939 Session Laws, Ch. 485). Likewise this proceeding is dissimilar to one dealt with in *Bagley v. Bloch*, 83 Or. 607, 163 P. 425. Our conclusion that a tender was not necessary is supported, we believe, by *Title Trust Co. v. Aylsworth*, 40 Or. 20, 66 P. 276, and *Jory v. Palace Drygoods Co.*, 30 Or. 196, 46 P. 786.

It follows from the above that the judgment and decree of the circuit court must be modified by the elimination from that part of the judgment the sums mentioned in certificates of delinquency Nos. 2169 and 2170, and by the elimination from the decree of the lien based upon those tax levies. In all other respects the decree will be affirmed. The cause is remanded to the circuit court for the purpose of these modifications. Costs and disbursements will not be allowed to either party.